336 So.2d 764 (1976)
Catherine K. PARNELL
v.
FIRST SAVINGS AND LOAN ASSOCIATION OF LEAKESVILLE.
No. 48769.
Supreme Court of Mississippi.
August 31, 1976.
*765 Horton Hillman, Leakesville, for appellant.
Curtis Breland, Leakesville, for appellee.
Before INZER, SUGG and LEE, JJ.
LEE, Justice, for the Court:
Catherine Parnell appeals from a decree of the Chancery Court of Greene County dismissing her bill of complaint against First Savings and Loan Association of Leakesville. We reverse.
Appellant assigns as error:
(1) The judgment of the trial court is contrary to the law and the evidence, and
(2) The trial court erred in admitting certain evidence incompetent under Mississippi Code Annotated § 13-1-7 (1972) [Dead Man's Statute].
On October 31, 1972, Catherine Parnell and Walter Parnell, her husband, obtained a loan from appellee in the sum of thirteen thousand dollars ($13,000.00) for the purpose of buying a home, and they secured the loan by deed of trust on the property. At the time of loan closing, appellee inquired whether they desired credit life insurance, and the Parnells answered in the affirmative. Accordingly, the sum of one hundred twenty-three dollars and three cents ($123.03) was paid to appellee by the Parnells (financed in the loan at the interest rate of 7 3/4%) for the first year's premium, and the sum of ten dollars and twenty-six cents ($10.26) was added to the monthly loan installments for the purpose of paying the second year's premium.
After closing the loan, appellee's manager discovered that he had failed to secure Parnell's signature on a credit life insurance application, and on November 6, 1972, he wrote Parnell:
"Today I received your loan file and it was determined that the life insurance application was not filled out.
I urge you to come to this office immediately after receiving this letter."
He also testified he saw Parnell at the Lodge that night and:
"I mentioned in person to Hank Parnell, which was our way of referring to him in the lodge, I remembered the case and I was excited because it had not been done [application signed] and urged him to come to the office immediately."
He later testified he explained to Parnell that no insurance would be issued until the application was completed and signed.
*766 Suffice it to say, Parnell never signed the application and four (4) consecutive monthly installments, each including $10.26 for credit life insurance premiums, had been paid on the loan when Parnell died March 10, 1973. The sums collected by appellee for the credit life insurance premiums were deposited and retained by it in the Parnell loan escrow account, and the money was still in that account at the time of the trial.
After her husband's death, appellant carried his death certificate to appellee's manager, who received it and placed it in the Parnell file. Appellant denied she and her husband had received a letter from appellee that the application for insurance had not been signed, and she testified she and her husband thought the insurance was in effect. Appellee's manager consulted its attorney and then advised appellant that no policy had been issued and that she had no credit life insurance.
The first step in applying for the loan was the execution of a disclosure statement pursuant to the Federal Truth in Lending Act, which instrument was signed by appellant and appellee, and set forth the terms of the loan, the amount, the due dates and the amount of the insurance, taxes and closing costs. The procedure for obtaining credit life insurance was for the borrower to sign an application for the insurance and the appellee forwarded that application to the representative of the insurance company. If the application were approved and the policy issued, it was sent to appellee, who retained the policy in its file, and notified the borrower that the insurance was in effect.
The appellant contends that appellee, through its manager, was an agent for an insurance company [appellee used Republic National Life Insurance Company], and that by accepting the premiums a contract of insurance was in effect. The cases, relied upon in support of that contention, relate to the powers of insurance agents to bind their principals in their dealing with others, are not in point with the real question here and offer little help. American Casualty Company v. Whitehead, 206 So.2d 838 (Miss. 1968). The question is one of first impression in this state, and there is little authority in other jurisdictions that shed light upon it.
In Burgess v. Charlottesville Savings & Loan Association, 349 F. Supp. 133 (1972) rev'd on other grounds 477 F.2d 40 (4th Cir.1973), Burgess obtained a loan from appellee and signed a Truth-in-Lending statement which contained a request for credit life insurance. No application for such insurance was ever signed by Burgess, and no premiums were collected or received by appellee. The court held that it was impossible for appellee to form a contract of insurance, that there was no evidence that a contract to procure insurance was formed, and that there was no merit in appellant's claim under Virginia law.
The only question in Peer v. First Federal Savings & Loan Association of Cumberland, 273 Md. 610, 331 A.2d 299 (1975), was whether a contract to provide credit life insurance existed between the parties. The following occurred in connection with the fifteen thousand dollar ($15,000.00) loan:
(1) Peer signed a statement in the truth-in-lending notice that "I desire credit life insurance only."
(2) A space provided therein for cost of life and/or health insurance premiums was left blank.
(3) In the payment coupon book and in the annual statement of Peer's loan account listing payments on principal, interest, escrow and late charges, no charge was shown for life insurance.
(4) A letter was given to the Peers at the time of their loan commitment recommending credit life insurance and advising that a life insurance representative would call upon them to explain the program.
(5) No insurance representative ever appeared.
(6) No charge was ever made for credit life insurance.
(7) The Peers never paid any premiums for life insurance.
*767 In emphasizing that no premiums for credit life insurance were ever charged or paid, the court said: "It is manifest on the record before us that First Federal did not contract to provide Mr. Peer with credit life insurance and pay the premiums out of the monthly mortgage payments." 331 A.2d at 302.
In contrast:
(1) Parnell executed a disclosure statement setting out the escrow account, including the first year's premium and two monthly payments for credit life insurance, which were financed by appellee.
(2) A closing statement in the handwriting of appellee's manager with the title "Walter Parnell and Catherine K. Parnell" itemized the closing costs and reflected therein the sum of one hundred twenty-three dollars and three cents ($123.03), first year's credit life insurance premium, and ten dollars and twenty-six cents ($10.26) separate items for two months' premiums on said insurance.
(3) Parnell's loan account book reflected four monthly payments on the credit life insurance premium for the second year.
(4) Appellee admitted that the Parnells paid the first year's premium on credit life insurance, paid four monthly installments on the second year's premium and that it received and retained those payments in the Parnell escrow account.
We adopt the view expressed in Watkins v. Valley Fidelity and Trust Company, 474 S.W.2d 915 (Tenn. 1971). Morris Williams financed the purchase of an automobile for twenty-four hundred ninety-seven dollars and fifty cents ($2,497.50) balance, plus two hundred fifty-one dollars ($251.00) insurance, plus eighty-one dollars and thirty-seven cents ($81.37) credit life premiums, aggregating the sum of twenty-eight hundred twenty-nine dollars and eighty-seven cents ($2,829.87) to be financed. A finance charge of five hundred fourteen dollars and sixty-three cents ($514.63) was added, resulting in a loan contract of thirty-three hundred forty-four dollars and fifty cents ($3,344.50) signed by Williams. The amount of $81.37 was held by the bank, through error, in its fees account, whereas it should have been deposited in the account of the automobile dealer designated as credit life insurance for the purchase of the insurance. Upon the death of Williams, payment of the contract amount was declined since no credit life insurance had been purchased to secure the loan. The court said:
"The bank argues there was no contract between it and the decedent whereby the bank was to purchase credit life insurance, and if a contract be claimed it fails for lack of consideration to the bank. The bank argues it merely contracted to lend money. We hold this contention is not sound under the record.
The contract was proved as Exhibit 2 in the record, designated as Loan No. 0185 made by the bank to Morris Williams. This contract as herein noted included a charge of $81.37 for credit life insurance. That figure was included in the `Amount to be Financed' upon which a finance charge of $514.63 was figured and added thereto with the resulting $3,344.50 shown as `The Amount of Contract.' We hold this instrument was the contract, and the $514.63 finance charge was the consideration flowing to the Bank.
When a bank makes a charge against a borrower for credit life insurance premiums, includes that amount in the loan, and retains the money so charged, we hold that bank not only assumes the contractual obligation to properly apply the amount to credit life insurance, but also stands in a fiduciary capacity toward the borrower to see that the amount so charged and withheld is actually applied to the purchase of such insurance.
The inclusion of credit life insurance in a lender-borrower transaction is not for the sole benefit of, nor at the option of the lender. Credit life insurance is also a very important and vital part of the transaction to the borrower because it *768 offers absolute protection to his estate for the unpaid balance of the debt in the event of his death before payment in full.
The bank failed to apply the $81.37 to the purchase of credit life insurance on the life of Morris Williams, and offered no reason therefor except error on the part of an employee. We hold the bank thereby breached its contract with Morris Williams, and breached its fiduciary duty to purchase the insurance, with a resulting loss to the estate of Morris Williams in the sum of $2,262.99, that being the unpaid balance of the debt." 474 S.W.2d at 918.
We hold that when the appellee, First Savings and Loan Association of Leakesville, financed, collected and retained the sum of $123.03 for one year's premium on credit life insurance for Parnell, and collected and retained the sum of $10.26 monthly for a period of four months with which to provide credit life insurance for the second year, it assumed a contractual obligation to obtain credit life insurance for Parnell and to apply the amounts so received to credit life insurance, and that it stood in a fiduciary capacity towards the Parnells to see that the amounts so charged, collected and withheld were actually applied to obtaining and purchasing such insurance.
There is no merit in appellant's contention that appellee's manager was incompetent to testify under the Dead Man's Statute. He did not testify to defend his claim against the estate of the deceased, but that of his employer corporation. Rosetti v. Stein, 272 So.2d 633 (Miss. 1973); Central Optical Merchandising Co. v. Lowe's Estate, 249 Miss. 61, 160 So.2d 673 (1964).
The bill of complaint prayed for cancellation of the deed of trust and for general relief. We reverse and hold that appellant is entitled to such amount as may be equal to the sum now required to satisfy and discharge the obligation to appellee, and remand the case to the trial court for the purpose of making that determination.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.