74

STONE ET AL. *v.* DAVIS, APPELLEE, ET AL; ASHTABULA
COUNTY SAVINGS & LOAN COMPANY, APPELLANT.

(No. 80-585—Decided April 22, 1981.)

*Mr. Frank R. Bodor,* for appellee.

*Messrs. Parks, Eisele, Bates & Wilsman* and *Mr. John A. Hallbauer,* for appellant.

CORRIGAN, J.  In this appeal, Ashtabula S & L advances six propositions of law which are considered *infra.*

I.

Propositions of law Nos. 1 through 3, which may be treated together, read as follows:

"[1.] A federal truth-in-lending Regulation Z disclosure form promulgated by the Federal Reserve Board does not render a creditor using such form liable under Ohio law in either contract or tort for the non-existence of insurance for which a debtor has indicated his 'desire' on the disclosure form.

"[2.] A lending institution dealing at arm's length with a prospective borrower prior to the creation of any debtor-creditor or other contractual relationship has no tort law duty to affirmatively advise and counsel the prospective debtor as to the legal mechanics or the legal consequences of either the prospective lending transaction or collateral matters.

"[3.] The Federal Truth-in-Lending Act contains and creates its own exclusive remedies and liabilities, and an Ohio court's application of the Act and of forms promulgated thereunder by a federal agency in disregard of the Act's express limitations upon liability is violative of both the federal and the Ohio Constitutions."

The major thrust of the arguments underlying these propositions of law is that a lending institution, which complies with the disclosure requirements of federal truth-in-lending law (Sections 1601 *et seq.,* Title 15, U. S. Code) and, in so doing, notifies its loan customer that procurement of mortgage insurance is not a condition for the loan and need be purchased only if the customer so desires, does not, upon eliciting from the customer an expressed desire for mortgage insurance, assume a further duty to disclose to the customer

how such insurance may be procured. We do not accept appellant's argument as a correct statement of Ohio law, and, for the reasons which follow, we hold instead that a lending institution does assume this further duty of disclosure and, in negligently failing to observe this duty, may become liable for any injury to the customer proximately caused.

In *Umbaugh Pole Bldg. Co.* v. *Scott* (1979), 58 Ohio St. 2d 282, we recognized that, in most instances, the relationship of a creditor to his debtor, governed by the principles of freedom of contract, was not a fiduciary relationship. There, we held that evidence which revealed that the creditor had given advice to the debtor concerning the operation of the debtor's business was insufficient to transform what was otherwise a business relationship into a fiduciary relationship. In so holding, we conclude that, in the matter upon which the advice there was rendered, the parties were operating at arm's length, each seeking to protect his own legitimate business interests. *Id.,* at page 287.

The facts are different in the case *sub judice* and more compelling of a conclusion that, in broaching the subject of mortgage insurance, Ashtabula S & L was acting as a fiduciary to Danny and Judy Davis, its loan customers.

"A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Employment* (1974), 40 Ohio St. 2d 107, 115. A fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed. *Umbaugh, supra.*

The facts surrounding and the setting in which a bank gives advice to a loan customer on the subject of mortgage insurance warrant a conclusion that, in this aspect of the mortgage loan process, the bank acts as its customer's fiduciary and is under a duty to fairly disclose to the customer the mechanics of procuring such insurance.

We observe that, while a bank and its customer may be said to stand at arm's length in negotiating the terms and conditions of a mortgage loan, it is unrealistic to believe that this

equality of position carries over into the area of loan processing, which customarily includes advising the customer as to the benefits of procuring mortgage insurance on the property which secures the bank's loan.

In the case before us, Judy Davis and her husband Danny came to Ashtabula S & L as a young married couple, apparently encountering the complex mortgage loan process for the first time in their lives. Undoubtedly, their every action in assisting the expeditious processing of their loan was guided by officers of Ashtabula S & L, upon whom they justifiably relied as experts in the field of loan processing. When Ashtabula S & L broached the subject of mortgage insurance and elicited an expressed desire for it by Danny Davis, both sides to the loan transaction must have understood that a special trust or confidence had been reposed in Ashtabula S & L to advise and assist the Davises in procuring the insurance. When Ashtabula S & L negligently failed to adhere to its customary policy of informing the Davises that they must procure the mortgage insurance themselves, it breached the fiduciary duty of fair disclosure which it owed to them.

We find, contrary to appellant's arguments, that our holding is supported by the existence of federal truth-in-lending law. In the enactment of this legislation on loan disclosure aimed at promoting the informed use of credit, Congress implicitly recognized that, in matters integrally related to the complex loan processing procedure utilized in the modern banking system, the principle of freedom of contract must be aided, the arm's length bargaining assisted, by imposing certain duties of disclosure upon banks. Moreover, Congress expressly provided that its disclosure scheme was not intended to preclude the States from formulating their own disclosurer requirements, so long as they were not inconsistent with the federal scheme. Section 1610, Title 15, U. S. Code. Therefore, we find the cases from other jurisdictions cited by appellant, in support of the proposition that use of a Regulation Z disclosure form, approved by the Federal Reserve Board as sufficient to satisfy the requirement of truth-in-lending law, cannot give rise to a cause of action under State law in tort or contract, to be inapposite or, at best, unpersuasive. See *Burgess* v. *Charlottesville S. & L. Assn.*

(D.C. W.D. Va. 1972), 349 F. Supp. 133, remanded at 477 F. 2d 40 (C.A. 4, 1973); *Peer* v. *First Federal S & L. Assn. of Cumberland* (1975), 273 Md. 610, 331 A. 2d 299; and *In re Estate of Johnson* (1975), 195 Neb. 131, 236 N.W. 2d 838. But, see, *Bass* v. *Home Federal S. & L. Assn.* (1979), 266 Ark. 770, 587 S.W. 2d 48.

We further find support for our holding in the recognition that banks do not act as disinterested experts in advising loan customers of the availability of mortgage insurance, but instead have a direct pecuniary interest in inducing the customer to procure it. Mortgage insurance serves to protect the bank's investment in a loan by providing a ready source of funds for the loan's repayment should the debtor subsequently suffer an untimely death. Furthermore, as was brought out in testimony presented at the trial of the case now before us, banks often act as collection agents for mortgage insurance, adjusting their debtor's payment schedule to include payment of the insurance premiums and then remitting the collected premiums to the insurance company, receiving in return a percentage commission for this service.

In light of all the foregoing considerations, we hold that, in broaching the subject of mortgage insurance to a loan customer, a lending institution has a duty to advise the customer as to how this insurance may be procured. Where, as in the instant case, a bank uses a Regulation Z disclosure form to elicit from a customer his desire for mortgage insurance and thereafter negligently fails to further advise the customer that he must procure it himself, the bank breaches its duty of disclosure, and may be held liable for any proximately caused injury to the customer resulting from such negligence.

Our holding today is not at odds with our longstanding decision in *Patten* v. *Continental Casualty Co.* (1954), 162 Ohio St. 18, in which we held, in paragraph one of the syllabus that, "[o]rdinarily, an applicant for a policy of casualty insurance, who pays the premium at the time of the application, may not, in an action in tort, recover from an insurer damages resulting from the failure of the insurer to act upon such application within a reasonable time." There, we were not presented with the issue of whether the applicant and the insurance company were in fiduciary relationship.

Finally, we find no merit in appellant's argument that whatever duty of disclosure it may have owed the Davises, the duty ended with Danny Davis' death. This argument incorrectly apprehends the scope of a bank's duty of disclosure to its loan customers, which certainly encompasses the spouse who is a co-debtor of the mortgage loan and also the intended beneficiary of the mortgage insurance which is to be procured.

## II.

Propositions of law Nos. 4 and 5, which may also be treated together, read as follows:

"[4.] It is inconsistent with any rational principle or theory of compensatory damages that a party to litigation should be put in a far better position than if the basis for litigation had not occurred.

"[5.] Whether in contract or in tort, a party who has the burden of proof on an issue must prove (1) the existence of a duty recognized in law and owed by the adverse party to the party seeking recovery, (2) a breach of that duty, and (3) that such breach was the proximate cause of ascertainable damages; and where other causes not under the control of the defending party could reasonably have also caused the loss, the party seeking recovery must further affirmatively prove by a preponderance of the evidence that such other matters were not the cause of the loss."

Under these propositions of law, appellant advances two arguments which, in essence, challenge the trial court's finding that appellant's negligence was the sole and proximate cause of Judy Davis' injury.

Appellant initially submits that Davis failed, as a matter of law, to meet her burden of proving proximate causation, because she failed to exclude the effectiveness of two other possible causes of her injury, viz., that, first, had appellant advised the Davises as to how they might procure mortgage insurance, the mortgage insurer might have rejected any application it received from Danny Davis; and that, secondly, had Danny Davis procured mortgage insurance, it would have been canceled prior to his death for nonpayment of premiums when the Davises defaulted on their mortgage payments to appellant three months prior to Danny Davis' death. See *Gedra* v. *Dallmer Co.* (1950), 153 Ohio St. 258.

The language in *Gedra, supra,* which states that a plaintiff must "exclude the effectiveness" of other possible causes of an injury for which the defendant is not legally responsible, simply means that his evidence must be such that a trier of fact may reasonably determine that it is more likely than not that the defendant's negligence was the cause of the plaintiff's injury. See *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 249-52. Otherwise stated, the assigned cause of the injury must be more probable than the totality of other possible causes interjected by the evidence produced at trial.

We conclude that appellee's evidence was sufficient to enable a trier of fact to determine that appellant's negligence was the proximate cause of the injury.

While, as appellant has pointed out, a mortgage insurer would have been under no duty to have accepted any application by Danny Davis for mortgage insurance, we believe that a trier of fact presented with evidence that Danny Davis was an apparently healthy, 21 year old at the time such an application would have been made, could reasonably have found that the possibility that his application would have been rejected was exceedingly remote.

The trier of fact could also have reasonably found that the possibility that any mortgage insurance procured by Danny Davis would thereafter have lapsed prior to Davis' death was remote.

Evidence was adduced at the trial of this case tending to show that, had Danny Davis procured mortgage insurance, Ashtabula S & L would have offered to collect the premiums on his behalf, remit the collected premiums every six months to Davis' mortgage insurer, and adjust Davis' mortgage payments accordingly. The possibility of a lapse in coverage for any mortgage insurance Davis might have procured was thus conditional upon the occurrence of the following sequence of events: first, that a decision by Davis had been made to permit Ashtabula S & L to collect and remit Davis' premiums to his mortgage insurer; second, that the payment of a six-month premium had come due during the period that Davis was in default of his mortgage loan with Ashtabula S & L; and third, that Davis, upon receiving notice that his insurance coverage

has lapsed, had failed to renew the policy during the statutorily mandated grace period.

In light of the remoteness of these two other possible causes for Judy Davis' injury, we conclude that the trial court, sitting as trier of fact, could reasonably have found that appellee had met her burden of proving that appellant's negligence was more likely than not the proximate cause of her loss of mortgage insurance proceeds.

In its second argument concerning the issue of proximate cause, appellant submits that the Davises' failure to have discovered, prior to Danny Davis' death, that mortgage insurance had never been procured for Danny by Ashtabula S & L, and the continuation of mortgage payments by Judy Davis after her husband's death, demonstrate that Judy Davis failed at trial to meet her burden of proving that appellant's breach of its duty to advise its loan customers, as to how mortgage insurance may be procured, was the proximate cause of her injury. In this argument, although it does not expressly designate the issue as such, appellant, in essence, asserts that the Davises' conduct in relying upon Ashtabula S & L constituted contributory negligence barring Judy Davis from recovery on her claim.

Whether a plaintiff's own conduct, in the events leading up to his injury, constitutes contributory negligence is ordinarily an issue for the trier of fact to resolve, unless reasonable minds could only conclude that the conduct revealed a want of ordinary care to protect oneself from injury and, in fact, contributed to the causation of the injury suffered. See, generally, *Brinkmoeller* v. *Wilson* (1975), 41 Ohio St. 2d 223; *Bahm* v. *Pittsburgh & Lake Erie Rd. Co.* (1966), 6 Ohio St. 2d 192; *Grossnickle* v. *Village of Germantown* (1965), 3 Ohio St. 2d 96; *Cincinnati Traction Co.* v. *Forrest* (1905), 73 Ohio St. 1, 5; *Baltimore & Ohio Rd. Co.* v. *Whitacre* (1880), 35 Ohio St. 627; and *Robison* v. *Gary* (1876), 28 Ohio St. 241. Cf. *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271; and *Rothfuss* v. *Hamilton Masonic Temple Co.* (1973), 34 Ohio St. 2d 176.

In the case *sub judice,* the only undisputed evidence offered at trial on the issue of the Davises' contributory negligence tended to establish the fact that, from October

1972 until Danny Davis' death in July 1975, the Davises never discovered that Ashtabula S & L had not procured mortgage insurance on their behalf as they had believed it had, and that thereafter Judy Davis continued to make mortgage payments to Ashtabula S & L until the Stones instituted their foreclosure action against her. While we concur that proof of these facts was highly probative of negligence on the Davises' part, we are not prepared to conclude that it demonstrated negligence as a matter of law. In light of the fiduciary relationship, which we have found to have existed in this aspect of appellant and appellees' business relationship, and the complexity of the loan process, which we above alluded to, a trier of fact could reasonably have found that the Davises did not fail to exercise ordinary care in believing that Ashtabula S & L had procured mortgage insurance for them in connection with the loan it had made to them in 1972.

Therefore, we conclude that appellee did not, as a matter of law, fail to present sufficient evidence to support her burden of proving that appellant's negligence was the sole and proximate cause of her injury.

## III.

Appellant's finally considered proposition of law No. 6 reads as follows:

"A trial court in a civil, non-jury matter has a mandatory duty to state separately its findings of fact from its conclusions of law upon a clear and timely request of any party directed to the court, and a general opinion and judgment entry containing factual material interspersed with legal principles and conclusions is not compliance with Civil Rule 52."

In rendering its judgment for appellee below, the trial court set forth its factual findings and legal conclusions in a well-written, carefully considered opinion. Thereafter, in overruling appellant's request for findings of fact and conclusions of law pursuant to Civ. R. 52, the trial court stated that its opinion satisfied the requirements of this rule.

Civ. R. 52 expressly provides that an opinion or memorandum of decision entered in an action by a trial court may satisfy its requirements, if it contains findings of fact and conclusions of law "stated separately."

In *In re Schoeppner* (1976), 46 Ohio St. 2d 21, at page 23, this court found that a trial court's ruling which recited various facts and a legal conclusion satisfied the requirements of Civ. R. 52, where, when considered together with other parts of the trial court's record, it formed an adequate base upon which to decide the narrow legal issue presented.

We, similarly, in the case before us, conclude that the trial court's opinion satisfied the requirements of Civ. R. 52. In so concluding, we observe that the parties to the trial stipulated to a number of the relevant facts and did not dispute the evidence of most of that which remained. The major disputed fact at trial, viz., whether any officer of Ashtabula S & L had ever informed the Davises as to how mortgage insurance might be procured, was clearly resolved in appellee's favor and so stated in the court's opinion.

Moreover, the trial court's opinion explicitly revealed the court's legal conclusion that Ashtabula S & L's negligence in failing to inform the Davises as to how they might procure mortgage insurance was the proximate cause of Judy Davis' loss of insurance proceeds.

Accordingly, we find, as we did in *In re Schoeppner, supra,* that the trial court's overruling of appellant's request for findings of fact and conclusions of law was not contrary to the provisions of Civ. R. 52.

Finding no merit in any of the arguments advanced by appellant, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, LOCHER, HOLMES and C. BROWN, JJ., concur.

CORRIGAN, J., of the Eighth Appellate District, sitting for SWEENEY, J.