580 So.2d 727 (1991)
HANCOCK BANK
v.
Milton Eugene TRAVIS and Willie Mae Travis.
No. 89-CA-0938.
Supreme Court of Mississippi.
March 13, 1991.
As Modified on Denial of Rehearing June 26, 1991.
*728 William V. Westbrook, III, White & Morse, Gulfport, for appellant.
Malcolm F. Jones, Pass Christian, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:

I
Hancock Bank appeals from an adverse ruling in its quest for a declaratory judgment. At issue is the effect of a borrower's election for disability insurance on a bank provided Truth-in-Lending[1] disclosure form where the bank failed to follow through and acquire the insurance. The bank concedes liability but seeks to restrict its exposure to a two year period of disability, the kind of policy it wrote at the time. Because the borrower was not informed of such a restriction by the form or in any other manner the chancery court denied the bank relief. Finding that the chancellor's ruling is not manifestly in error except with regard to the failure to allow credit for premiums which would have been paid and for mortgage payments not made when there was no disability, we affirm in part and reverse in part.

II
Hancock Bank initiated this action with a complaint for declaratory judgment pursuant to Miss.R.Civ.Pro. 57. Named as defendants in the suit were Milton Eugene and Willie Mae Travis. (Travises) The court below was asked to resolve an actual dispute by declaring the rights and obligations of the parties pursuant to a fifteen year, $40,000.00 promissory note and deed of trust executed by the Travises in favor of Hancock Bank and the truth-in-lending form executed in process of closing that loan. The bank sought to have the court declare that it was liable only for those mortgage payments which would have been made pursuant to the disability policy that it was offering at the time of the transaction which limited disability payments to a period of two years. The bank also sought a declaration of its rights with respect to premiums which would have been paid and two loan payments not made by the borrower prior to the onset of disability.

Facts
On May 27, 1983, the Travises jointly executed a promissory note in favor of Hancock Bank, in the principal amount of $40,000.00, secured by a deed of trust, also dated May 27. The loan closing took place at the Travises' attorney's office. No representatives from the bank were present at the closing. Consequently Mr. and Mrs. Travis were not informed at closing or anytime thereafter that it would be necessary for them, in accordance with bank procedure, to complete a separate application for credit disability insurance.
Concurrent with the execution of the deed and note, Mr. Travis completed a form entitled "Notice to Customers Required by Federal Law Reserve Regulation Z Mortgage Loan Disclosure," ("Regulation Z"). This document was prepared by the bank in connection with the real estate loan. It was intended to inform the Travises of the costs incurred in obtaining their loan and to ascertain the Travises' wishes concerning the voluntary purchase of credit life insurance and credit disability insurance. On this form, three types of insurance were offered  credit life, credit disability, and credit life and disability.
Mr. Travis affixed his signature in the space provided adjacent to the credit life and disability offering, thereby requesting that Hancock Bank procure credit life and disability insurance on his behalf. Testimony established that it was the usual practice of the bank after such forms were completed, to have all the loan closing documents taken to the bank's direct mortgage loan department. The completed forms would then be reviewed by a bank employee in the mortgage loan department. In the case at bar, an employee did not notice that Mr. Travis had indicated he *729 wished to obtain credit life and disability insurance. As a result of this oversight, the bank neglected to mail Mr. Travis an application presenting and explaining the policy. Consequently, Hancock Bank failed to request or procure insurance on behalf of Mr. Travis.
Approximately two years later, Mr. Travis was injured and later became totally disabled as a result of a slip and fall which occurred at a local K-Mart store. On May 20, 1985, the Travises made a demand on Hancock Bank for credit disability benefits. It was at this time the bank discovered its error. Nevertheless, upon receiving the request from the Travises, Hancock Bank made a demand on Integon Insurance Company[2] ("Integon") for payment of insurance benefits on behalf of the Travises. When Integon refused to make the mortgage payments, the bank brought a declaratory judgment action in the United States District Court for the Southern District of Mississippi, seeking to establish a contract of insurance between Mr. Travis and Integon. Hancock Bank v. Integon Life Ins. Co., 660 F. Supp. 459 (S.D.Miss. 1986). The district court held that Mr. Travis' mere indication that he desired credit life and disability insurance, did not create any "actual or implied contract binding Integon Life Insurance Corporation to provide credit insurance to the Travises."
Shortly after the district court's ruling, Hancock Bank brought the present action against Mr. and Mrs. Travis. In the lower court, the bank admitted its liability to the Travises for its failure to procure insurance, but sought to limit its exposure to the maximum benefits which would have been payable under the Integon Policy the bank would have obtained. The maximum coverage Integon would have provided would have been twenty-four (24) monthly payments at $493.01 (the amount of the monthly note paid by the Travises), for a total of $13,157.28. Testimony revealed at the time of Mr. Travis' injury, the Travises owed $38,218.26 on the loan. The bank offered to credit the Travis account for the thirteen-thousand odd dollars, and asked the court to declare that the note and deed were otherwise enforceable. The court was also asked to grant Hancock Bank the right to collect $986.02, representing the two monthly mortgage payments, which were due and owing Hancock at the onset of Mr. Travis' disability, plus late charges.[3]
The Travises denied all liability to the bank. They contended that they relied soley upon Hancock to their detriment, as the bank neglected to obtain the credit disability insurance requested by Mr. Travis. Therefore, they argue Hancock is obligated to make all payments on the note for as long as Mr. Travis remains disabled, or for the remainder of the loan, whichever is less.
On March 4, 1988, the bank moved for summary judgment pursuant to Miss.R. Civ.Pro. 56. The Travises did not respond to the motion prior to the hearing on May 3, 1988. They did, however, present oral argument at the hearing, as well as a "Brief in Opposition to Plaintiff's Motion for Summary Judgment" after the hearing. This motion was denied as was a motion to reconsider denial of summary judgment. The case proceeded to trial on October 26, 1988. At the conclusion of the hearing, the court took the matter under advisement and on May 12, 1989, ruled Hancock Bank was "obligated to make monthly payments on the loan for the benefit of the Travises so long as Mr. Travis' disability continues or until the loan is paid in full."
Aggrieved, Hancock Bank appeals to this Court, presenting three issues for our review:
*730 Did the trial court properly deny Hancock's unopposed motion for summary judgment based solely on a finding that the non-movant, Mr. Travis, in a deposition, asserted his contention that the credit disability policy in question should provide coverage for the term of the loan?
Did the trial court improperly place Hancock Bank in the position of a disability insurer and enjoin the enforcement of a valid 15 year mortgage and deed of trust so long as one of the co-makers of the note and deed is disabled?
Assuming arguendo that the trial court properly entered judgment in favor of the Travises, do the opinion and judgment granted adequately address the issues presented by Hancock's complaint for declaratory judgment?

III

Propriety of Summary Judgment
Hancock Bank contends the chancery court erred in denying its motion for summary disposition (1) as the Travises rested on the pleadings, failed to oppose its motion for summary judgment and chose not to file counter-affidavits, (2) by relying on allegations in the pleadings as opposed to those of an exhibit, and (3) contra this Court's holding that lenders assume contractural obligations to obtain insurance only after financing, collecting, and retaining premiums for such coverage.
The Travises contend the trial court properly denied the motion, as this case was not one which could be decided properly without a trial on the merits. The record is supportive of the Travises contention. Miss.R.Civ.Pro. 56 provides for summary disposition in cases where no genuine factual dispute, between the parties, exists. The seminal case construing the procedure to be followed before summarily disposing of a case is Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). There we stated that a trial court, in considering a motion for summary judgment, must review with the utmost care, all evidentiary matters  pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Id. at 362. If, after conducting this review, there exists no genuine issue as to any material fact, then the moving party is entitled to judgment as a matter of law. Id. In accord is the advisory comment following the Rule, which states,
"a summary judgment motion is based on the pleadings and any affidavits, depositions, and other forms of evidence relative to the merits of the challenged claim ... that are available at the time the motion is made. The movant under Rule 56 is asserting that on the basis of the record as it then exists, there is no genuine issue as to any material fact."
Miss.R.Civ.Pro. 56 Advisory Comment.
Trial courts are admonished to avoid granting such judgments where to do so would be in derogation of a party's constitutional right to trial by jury. Brown v. Credit Center, Inc., 444 So.2d at 362. The Court advised, also, that summary judgment motions be granted with great caution. Finally, we have noted that "[e]ven where the test prescribed in [Rule 56] for granting a summary judgment appears to have been met in its entirety, a judge is not ordinarily required to grant summary judgment." Donald v. Reeves Transport Co. 538 So.2d 1191 (Miss. 1989). Against the backdrop of the previous principles, we hold the trial court correctly applied the precepts of Brown.
First, as to the Travises' alleged failure to file counter-affidavits in opposition to Hancock Bank's motion, the record indicates the Travises, via counsel, presented oral argument at the hearing on the Bank's motion. Additionally, appellees' counsel filed a Brief in Opposition to Summary Judgment. As the Travises' note in their brief to the Court, the bank seems to argue that a judgment summarily disposing of a case be entered by default where the non-movant fails to file counter-affidavits. This is clearly erroneous and not in line with the tenets espoused by the Brown Court. Hancock Bank premised its Rule 56 motion on copies of the note and deed, the Regulation Z form, the depositions of Mr. and Mrs. Travis, bank employees Gentry and White, and the sworn affidavit of an *731 Integon official. The trial court viewed all the evidence before him, and on the basis of Mr. Travis' deposition found the matter not amenable to summary disposition. In sum, the Travises, contrary to the bank's argument, did not rest merely on the pleadings but upon all the evidence before the court.
The bank argues summary judgment was proper as there existed a conflict between the pleadings and an exhibit; where such conflict exists, the content of the exhibit governs when the exhibit is the basis upon which relief is sought. This contention is premised on Mr. Travis' deposition where he stated it was his belief Hancock agreed to procure disability insurance for the full 15-year term of this loan based on the sentence in the Regulation Z form which reads: "the insurance premium quoted below is for the term of the loan, unless otherwise indicated." Hancock states that since there is no disability insurance premium quoted in the space provided for such quotations or elsewhere, the contention of Travis should have been disregarded as it is inconsistent with the plain language of the document. It also argues there existed no offer by Hancock to procure insurance for the Travises.
Merely examining the facts precludes judgment for the bank. First, there exists no conflict between Mr. Travis' deposition and the Regulation Z form. The Regulation Z form simply fails to quote a premium in the space provided next to Mr. Travis' signature. This lack of a quotation does not conflict with Mr. Travis' belief that the insurance coverage would be for the term of the loan. Second, at no time did any representatives of Hancock represent that disability coverage would be provided for a term less than fifteen (15) years. Additionally, neither of the Travises were told from where the coverage would come, therefore they were not aware of Integon being the exclusive insurer of Hancock Bank customers or Integon's twenty-four month maximum benefit coverage. Finally, the form itself positively states that unless otherwise indicated the period of coverage would be the term of the loan and no where therein was a limited term mentioned. The documentary evidence, then, was, for the bank, at best, ambiguous warranting resolution after full trial.
Hancock Bank contends that summary judgment should have been granted pursuant to this Court's holding in Parnell v. First S. & L. of Leakesville, 336 So.2d 764 (Miss. 1976). The Parnell Court held that when the lending institution financed, collected and retained the sum of one year's premium on life insurance and collected and retained monthly payments for four months, it assumed a contractual obligation to obtain credit life insurance for Parnell. Id. at 768. The bank argues that the Parnell case centered on the collection of monies and it was this collection of funds which rendered the savings and loan liable. Therefore, the bank contends, as no monies were collected from the Travises, it should not be held accountable and deemed insurer on the basis of Mr. Travis' signature.
Appellant's argument is confusing as the bank admits its liability to the Travises. Given that admission, we only address the extent of Hancock Bank's liability. Moreover, other courts which have examined the issue have, based on reasoning that we find persuasive, held that a party who agrees to procure insurance and fails to do so, assumes the position of insurer and thus risk of loss. Richmond v. Grabowski, 781 P.2d 192 (Colo. App. 1989), Heinert v. Home Federal Sav. & Loan Ass'n, 444 N.W.2d 718 (S.D. 1989) (insurance provision in loan disclosure statement (Regulation Z), signed by borrower, created contract in which financial institution agreed to procure credit life insurance for borrower) Sutton v. First National Bank of Crossville, 620 S.W.2d 526 (Tenn. App. 1981) (where language in loan disclosure statement pertaining to credit insurance constituted an offer by the bank to procure such insurance and there was acceptance by debtor supported by valid consideration, a contractual duty existed on part of the bank to procure credit life insurance). Accord, Stone v. Davis, 66 Ohio St.2d 74, 419 N.E.2d 1094 (1981), Bradley v. Oregon Trail Savings and Loan Association, 47 *732 Or. App. 871, 617 P.2d 263 (1980), Bass v. Home Federal Savings and Loan Association, 266 Ark. 770, 587 S.W.2d 48 (App. 1979) (all stating a loan disclosure form may serve as a basis for agreement to procure insurance). We find nothing in our law to the contrary. Moreover, we have also held that an alleged failure to procure insurance after accepting the responsibility to do so states a cause of action, against an insurance agent, sounding in tort as well as contract. Southside, Inc. v. Clark, 460 So.2d 113 (Miss. 1984).

Improper Placement of Hancock Bank as Disability Insurer
Hancock Bank contends it was improperly placed in the position of disability insurer given that Mr. Travis merely signed his name on a loan closing form next to a space which stated "I want credit life and disability insurance.", no terms, conditions or premium for such coverage were quoted to Mr. Travis by the bank, no disability premium was paid or collected, no insurance application was submitted by Mr. Travis to any insurer and no disability insurance policy was issued to Mr. Travis.
The Travises contend that an agreement to procure insurance existed between them and the bank and they are seeking to recover under the theories of breach of contract or principles of negligence.
Again we note that Hancock Bank pled its liability for disability benefits. As pointed out above, although we have not directly found liability on facts on all fours with those presented here, the clear weight of authority supports that liability. This contention is without merit.

Completeness of the Lower Court Ruling
Hancock contends the lower court ruling did not adequately address the issues presented by its complaint for declaratory judgment pursuant to Miss.R.Civ.Pro. 57. Specifically, this section of the Bank's complaint addressed the court's assessment of damages against the bank for its admitted negligence in failing to procure insurance for the Travises.
The lower court required Hancock Bank to make monthly payments on the loan for the benefit of the Travises so long as the disability continues or the loan is paid in full. While we are in agreement with that portion of the lower court's order assessing the extent of the bank's liability we agree that the chancellor stopped short of what is legally required and the bank is entitled to an offset for premiums which would have been paid by the Travises and for certain payments not made. To not hold the Travises liable for the premiums would unjustly enrich them and place them in a better position than they would have been had the insurance been procured. We hold that Hancock Bank is entitled to collect the premiums which would have been paid on a policy covering the full term of the loan. Additionally, we hold the chancery court erred in denying Hancock the $986.02 representing the past due monthly mortgage payments which predated Mr. Travis' injury. Hancock is entitled to the $986.02 plus penalties and interest thereon. Eastland v. Gregory, 530 So.2d 172 (Miss. 1988) (a party who breaches a contract is only liable for the damages caused by the breach, and the non-defaulting party is only entitled to be put in the same position he would have been had there been no breach). Finally, the question of Milton Travis' disability during the period of the loan is subject to verification in accordance with the standards of the industry in the area. In determining those standards, the court may consider the policy normally offered by Hancock Bank as well as other policies issued in the area by financial institutions.

IV
For the foregoing reasons we reverse the judgment below only insofar as it fails to adjudicate the rights of the parties with respect to specific payments due before the onset of disability and the amount of premiums which would have been paid for the insurance had it been procured as may be reasonably determined from the record, all with interest thereon from the time that each such payment of principal and interest *733 or premium would have been due. The court must also include as part of its order the mechanism by which disability and its duration will be determined. The remaining parts of the judgment below are affirmed.
AFFIRMED IN PART, REVERSED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., not participating.
NOTES
[1] See, Federal Truth In Lending Act, 15 U.S.C.A. § 1601 et seq.
[2] Testimony from bank executives revealed that Integon Insurance Company was the sole and exclusive insurer of credit insurance offered at Hancock. (Id. at 93; V. II, P. 31) The maximum benefit period under an Integon-issued policy was 24 months.

It is undisputed that the Travises were not informed by Hancock that credit disability insurance would be sought through the Integon Insurance Company, nor were they ever informed, until after Mr. Travis became ill, as to the terms of any policy that might have been issued by the Integon Insurance Company.
[3] The mortgage payments due April 1, and May 1, 1985 were not made by the Travises.