Joe B. **SHANER** and Cynthia K. **Shaner,** Plaintiffs–Appellants,

v.

**UNITED STATES of America, et al., Defendants–Appellees.**

No. 91–4173.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1992.

Decided Sept. 16, 1992.

Rehearing and Rehearing En Banc Denied Nov. 4, 1992.

---

1. This includes lawsuits brought under the Equal Pay Act, 29 U.S.C. § 206(d)(1).

Edward J. Sebold (argued) and Edward J. Sebold (briefed), Jenner & Block, Chicago, Ill., for plaintiffs-appellants.

Charles Hosterman (argued and briefed), U.S. Dist. Court for the State of Ohio, Columbus, Ohio, for defendants-appellees.

Before: KEITH and SUHRHEINRICH, Circuit Judges; and CONTIE, Senior Circuit Judge.

I

SUHRHEINRICH, Circuit Judge.

In 1981, a natural disaster struck Ohio. As a result, the entire state was designated a disaster relief area. The Shaners, who grew corn and beans at their Fairfield County, Ohio, farm, were among the Ohio farmers who suffered crop production losses in excess of thirty percent and thereby qualified for emergency loan relief.

Prior to the disaster, the Shaners had incurred substantial indebtedness to Cambridge Production Credit Association ("PCA"). The crop losses prevented the Shaners from paying the 1981 installment on this debt. PCA demanded payment in full or a liquidation sale.

In January 1982, the Shaners applied to FmHA for an emergency loan. Within two weeks the application was denied for insufficient cash flow and inability to refinance existing loans. The Shaners persisted in their attempts to secure an FmHA loan. On May 6, they met with Douglas Dietrich, FmHA supervisor for Fairfield County.

Subsequent to the May 6 meeting, Dietrich issued a certificate of approval. The lone requirement listed on the certificate was "[s]ecurity for this loan is a [first] lien on 1982 crops." Dietrich also sent the Shaners a letter announcing the approval, "subject to the availability of loan funds." However, Dietrich was concerned about FmHA's position vis-a-vis PCA. In particular, he was concerned that PCA might encumber the Shaners equipment so as to prevent them from planting a 1982 crop and that, even if a 1982 crop were planted, PCA's claim to it would be senior to FmHA's.

Seeking to avoid these risks, Dietrich notified the Shaners in July 1982 of his intention to cancel the loans. The reasons he gave were the failure to obtain for FmHA a first lien on the 1982 crops and the failure to obtain a non-disturbance agreement from PCA.[1] The Shaners filed for bankruptcy in August 1982, and Dietrich canceled the loan approvals effective in September.

Upon cancellation, the Shaners appealed Dietrich's determination. Their appeal was denied on the grounds of their failure to secure a non-disturbance agreement with PCA. On a subsequent appeal, FmHA's acting state director held for the Shaners, ruling that, because the Uniform Commercial Code would have given FmHA priority over PCA with respect to the 1982 crops, a first lien was unnecessary. On May 25, 1983, the acting state director reinstated the Shaners' application. Pursuing the application further, however, was not possible, as the Shaners were now in bankruptcy and the loss of land and equipment to their creditors disabled them from generating sufficient cash flow from their 1983 crops to qualify for a loan.

The parties now agree that Dietrich erred in requiring a first lien. The Shaners claim that this error constitutes negligence entitling them to recovery under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). They also claim that they were unconstitutionally deprived of various property

---

**1.** The non-disturbance agreement would have prevented PCA interfering with the Shaners' ability to plant a 1982 crop. The cancellation notice was the first occasion on which this requirement had been committed to writing. FmHA contends that Dietrich had orally informed the Shaners of this requirement; the Shaners deny this.

rights. The District Court rejected these arguments and granted summary judgment against the Shaners. We now affirm.

## II

The Shaners bring this claim under the Federal Tort Claims Act, which authorizes negligence suits against the federal government "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The Ohio Supreme Court has recently reviewed the line of cases dealing with the liability of lenders to borrowers in *Blon v. Bank One*, 35 Ohio St.3d 98, 519 N.E.2d 363 (1988). Under the framework established by the *Blon* court, the borrower and lender stand at arm's length while negotiating the terms and conditions of the loan and no fiduciary duty exists at this stage of the relationship. Once, however, the negotiations are complete and the relationship moves into the loan processing stage, a fiduciary duty of disclosure is imposed on the lender. *Id.* at 102, 519 N.E.2d 363.

The Shaners believe that their relationship with the FmHA had blossomed into the loan processing stage. They contend that FmHA's decision to cancel their loan resulted from negligence. Specifically, the concern on which the cancellation was based, the Shaners' failure to secure a first lien for FmHA, was obviated by U.C.C. § 9–312(2), which would have given FmHA the priority it sought through the lien.[2] The Shaners argue that FmHA was negligent in failing to recognize that requiring a first lien was unnecessary and in canceling the loan on this basis.[3] Since FmHA committed this negligence during the loan processing stage, the argument continues, FmHA violated its fiduciary duty to the Shaners.

The Shaners' reading of Ohio law is overripe. None of the cases it cites creates a broad fiduciary duty or a duty to avoid negligence. They merely create a duty to disclose. *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (bank has fiduciary duty when "broaching the subject of mortgage insurance"), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614 (1981). The duty to disclose stands as an exception to the general rule that the borrower-lender relationship is not a fiduciary one. *See Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979) (syllabus # 1). We will not expand the fiduciary duty to disclose absent a clear expression of contrary intent by the Ohio courts, particularly in light of *Blon*, which sought to circumscribe the scope of this duty.[4]

The Shaners argue alternatively that, if it has not already done so, the Ohio Supreme Court would impose a general fiduciary duty on FmHA, as its relationship with the Shaners is one of "special trust and confidence." *Blon*, 35 Ohio St.3d at 102, 519 N.E.2d 363. This argument is predicated primarily on the public purpose with which FmHA is affected. In this re-

---

**2.** The government concedes that the Shaners' reading of this provision, codified at Ohio Rev. Code Ann. § 1309.31(B), is correct and that the first lien requirement was unnecessary.

**3.** The question of whether FmHA's insistence on a first lien was negligent is not before us. Although we assume for the purposes of this appeal that this was negligence, the ultimate determination would rest, of course, with the factfinder.

**4.** FmHA raises a second defense, the Shaners' failure to obtain a non-disturbance agreement from PCA. FmHA contends that the Shaners were notified of this requirement at their May 6, 1982 meeting with Dietrich. The Shaners claim that they were not so informed until the cancellation. If it was a condition for the loan, the Shaners' failure to obtain a non-disturbance

agreement was adequate grounds for the cancellation. However, Mr. Shaner's affidavit raises sufficient doubt as to whether this was a condition to require a jury determination.

Similarly, FmHA asserts that Dietrich told the Shaners, again at the May 6 meeting, that they would be required to make a delinquent payment to PCA. The Shaners contend that the only condition imposed was that they obtain a first lien for FmHA. Moreover, Dietrich's notice of cancellation does not list failure to make this payment in any way, let alone as a ground for canceling the loan approvals. Resolution of this argument also lies with the trier of fact. Therefore, neither of these arguments support FmHA's position that summary judgment was appropriate.

spect, the Shaners liken their relationship with FmHA to that of an insured with its insurer. This analogy is fallow; for even if we accept it, it would only create a duty of good faith. Such a duty would require more than mere negligence as the basis for liability. Instead, the Shaners would be required to show that FmHA acted from a "dishonest purpose, moral obliquity, conscious wrongdoing," or in "breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Wasserman v. Buckeye Union Casualty Co.*, 32 Ohio St.2d 69, 73, 290 N.E.2d 837 (1972). The record offers no hint of such motive or conduct.

The Shaners next contend that the Good Samaritan Doctrine imposes a duty of due care on FmHA. Although the Ohio Supreme Court has never explicitly adopted this doctrine, the Court has cited it favorably, and it appears to be the law of Ohio. *See Wissel v. Ohio High School Athletic Assn.*, Nos. C–900397, C–900566, 1992 WL 42831, at *9, 1992 Ohio App. LEXIS 904, at *19 (Mar. 4, 1992) (final publication pending). As the Shaners fail to satisfy the Good Samaritan Doctrine's requirements, however, we need not resolve this question.

■ Recovery under the Good Samaritan Doctrine is limited to physical harm. Restatement (Second) of Torts § 323 (1964). The record contains no evidence of physical injury to the Shaners or their property. Therefore, summary judgment was properly granted as to the Good Samaritan claim.

### III

■ The Shaners assert property rights in the FmHA emergency loan they applied for and in access to the FmHA's administrative appeal process and claim that they have been deprived of this property in violation of the Fifth Amendment. However, the Shaners do not seek to have these property rights restored.[5] Instead, they seek money damages as compensation

for injuries resulting from the allegedly unconstitutional deprivation. The kernel of this contention is that the deprivation caused them to lose their farm. This claim, then, is in fact a *Bivens*[6] action. A *Bivens* action may be brought only against individual federal officials, not against the United States. *See, e.g., Ashbrook v. Block,* 917 F.2d 918, 924 (6th Cir.1990). Therefore, this claim may only be asserted against Dietrich individually.

■ Like the District Court, we do not believe that either of the asserted interests constitutes a property right. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

The Shaners cite *Association of Orange County Deputy Sheriffs v. Gates,* 716 F.2d 733 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984), for the proposition that they have a property interest in the FmHA emergency loan. This case actually supports the opposite conclusion. There, a California statute allowed retired deputy sheriffs to carry concealed weapons if the agency from which they retired issued them a certificate. In addition, this privilege could be denied or revoked for good cause. Several retired deputies claimed that this statute created an entitlement of which they could not be deprived without due process. This argument was rejected on the grounds that the good cause provision left no significant restriction on the agency's discretion; therefore, no entitlement was created. *Id.* at 734.

The FmHA has similarly broad discretion in determining whether to approve an application. For instance, the determination of whether an applicant has presented a via-

---

5. Indeed, the FmHA actually restored the asserted property rights, allowing the Shaners to pursue their administrative appeals and reinstating their loan application.

6. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

ble farm plan or has offered sufficient security are left largely to the sound judgment of FmHA. *See* 7 U.S.C. §§ 1961(a), 1964(d). Therefore, the Shaners' interest in obtaining an emergency loan was too speculative to be considered a property right. *Accord Nelson v. United States,* 16 Cl.Ct. 510 (1989) (property right does not exist until loan is approved and a contractual right results); *cf. Ashbrook,* 917 F.2d at 924 (no property right in additional FmHA funding).

When the Shaners' emergency loan application was first denied in January 1982, FmHA provided them with a complete statement of their appeal rights as required under 7 C.F.R. § 1900.56. After the July 1982 rejection, the notice to the Shaners was incomplete, omitting the statements required under section 1900.56(a)(4). The Shaners claim, misguidedly, that they had a property right in this information and that it was deprived without due process.

It is well-established that "due process 'is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property.'" *Nishiyama v. Dickson County,* 814 F.2d 277, 281–82 (6th Cir.1987) (en banc) (quoting *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986)) (emphasis in original). Even if the Shaners had a property right in information regarding administrative appeals, they must show that Dietrich was grossly negligent in failing to provide the information. *See id.* at 282.[7] *But see, e.g., Collins v. City of Harker Heights,* ―― U.S. ――, ―― n. 10, 112 S.Ct. 1061, 1069 n. 10, 117 L.Ed.2d 261, 274 n. 10 (1992) (intimating that an even more exacting requirement, deliberate or intentional conduct, should be applied). The Shaners have failed to even allege gross negligence. Nor does the record contain any evidence that would support such an allegation. Hence, any right the Shaners did have in the administrative

appeal information was not deprived in violation of the due process clause.

## IV

For the foregoing reasons, the district court's opinion and order granting summary judgment is AFFIRMED.

---

7. Although *Daniels* and *Nishiyama* involved Fourteenth Amendment due process claims against state officials under 42 U.S.C. § 1983, there is no reason to regard the Fifth Amendment due process clause as having a different meaning for the purposes of a suit against a federal official. *See* Erwin Chemerinsky, Federal Jurisdiction § 9.1, at 452–53 (1989). Thus, the *Nishiyama* gross negligence requirement applies here.