**HANCOCK BANK, Plaintiff,**

v.

**INTEGON LIFE INSURANCE CORPORATION, Defendant.**

**Civ. A. No. S85–1413 (GN).**

United States District Court,
S.D. Mississippi, S.D.

Nov. 17, 1986.

**460**

W.V. Westbrook, III, Gulfport, Miss., for plaintiff.

Floyd J. Logan, Gulfport, Miss., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEX, District Judge.

This Declaratory Judgment action was filed by Hancock Bank in the Chancery Court for the First Judicial District of Harrison County, Mississippi. Integon Life Insurance Company removed the cause to this Court on the grounds of diversity of citizenship. The question to be answered is whether the defendant, Integon Life Insurance Corporation, entered into a binding contract for credit life and disability insurance with Milton E. and Willie Mae Travis when the Travis' indicated on a mortgage loan disclosure form prepared by the plaintiff/mortgagor, Hancock Bank, that they wished to obtain credit insurance. Both parties have filed cross-motions for summary judgment.

### Factual Findings

1. Defendant, Integon Life Insurance Corporation, is a corporate entity organized and existing under the laws of the State of North Carolina and engaged in the business of selling insurance.

2. Hancock Bank is a corporation organized and existing under the laws of the State of Mississippi and engaged in the business of general banking.

3. Mrs. Kate Gentry is a Vice-President of Hancock Bank in charge of the Direct Mortgage Loan Department; the bank offers its direct mortgage customers credit insurance through its Real Estate Loan Department.

4. From 1977 through 1985, all such credit insurance coverage offered by Hancock Bank's Real Estate Department was placed exclusively with Integon Life Insurance Company ("Integon").

5. Mrs. Gentry was authorized to solicit and service credit life and credit disability insurance for Integon Life Insurance Company in Mississippi pursuant to a Memorandum of Agreement between the bank and Integon dated July 7, 1983.

6. The Memorandum of Agreement between the parties provided that "[t]he Collection Agent is not authorized to accept risks of any kind, to make or offer any contract of insurance, to waive forfeitures, to extend the time for paying a premium, or to obligate the Company in any way."

7. On May 27, 1983, Milton E. and Willie Mae Travis (the Travises) obtained a loan from Hancock Bank in the amount of $40,000.00 secured by a mortgage on their residence.

8. At the loan closing which took place at the Travises' attorney's office, the Travises executed various documents; most particularly, however, they executed a "Notice to Customers" required by Federal Reserve Law, Regulation "Z" Mortgage Disclosure Form.

9. The document was, as usual, prepared by Hancock Bank in connection with the real estate loan and was intended to inform the Travises of all costs incurred in obtaining their loan and to ascertain the Travises' wishes concerning the voluntary purchase of credit life insurance and credit disability insurance.

10. Milton C. Travis signed the signature line on the Mortgage Loan Disclosure Form which stated "I want credit life and disability insurance."

11. No employees, agents, or representatives of either Hancock Bank or Integon were present at the loan closing.

12. According to Hancock Bank's standard procedure, the Travises' loan closing

attorney returned all the loan closing documents to the bank's Direct Mortgage Loan Department, including the federally required Mortgage Loan Disclosure Form.

13. The Travises' loan packet was received and reviewed by a Hancock Bank employee in the Direct Mortgage Loan Department.

14. Through inadvertence, the employee did not take notice that Mr. Travis had indicated he wished to obtain credit life and disability insurance with respect to the $40,000.00 loan.

15. As a direct result of Hancock Bank's Direct Mortgage Loan Department's failure to note Mr. Travis' wish to obtain credit insurance, no Integon application for insurance was forwarded to the Travises' although that was the bank's standard operating procedure at the time.

16. Hancock Bank became aware that the Travises had requested credit life and credit disability insurance on or about May 20, 1985, when Mrs. Travis contacted the Direct Mortgage Loan Department of the bank to advise that Mr. Travis had been injured on or about May 18, 1985, and inquire about the process for collecting payment for their requested credit disability insurance.

17. Hancock Bank failed to forward the Travises the applications needed to obtain credit insurance; Hancock Bank collected no premiums for credit life or credit disability insurance from the Travises.

18. Integon's Disability Income Insurance application provides, "... the answers will form a part of the policy if issued and ... the insurance shall not be in force until this application has been approved by the Company and the policy issued and delivered to me [the applicant] subject to all the conditions set forth in the policy and the first premium paid by me [the applicant].

19. No application for credit disability or credit life insurance with Integon was ever filled out by the Travises.

20. No application for credit disability or credit life insurance was ever forwarded to Integon's home office by or on behalf of the Travises.

21. No agent, officer or employee of Integon had any knowledge that Mr. Travis had executed the Mortgage Loan Disclosure Form requesting credit life and credit disability insurance until after the injury to Mr. Travis.

22. Integon denied coverage to Mr. Travis based on the fact that there had never been an application submitted, a premium paid, and/or a policy written.

23. Hancock Bank was the named beneficiary on the credit life and credit disability insurance policies written by Integon on behalf of the bank's direct mortgage loan customers.

*Legal Conclusions*

The Mississippi Supreme Court, in line with its sister states, has recognized that when a financial lending institution represents to a borrower that the lender/bank is capable of obtaining, at the borrower's request, insurance for the the borrower that would protect against default in the event of the borrower's disability or death during the life of the loan, and the borrower accepts the lender's offer to obtain such insurance, the financial lending institution stands in a fiduciary capacity to its borrowers and has an obligation to attempt to obtain credit insurance for the borrower. *Parnell v. First Savings and Loan Association*, 336 So.2d 764, 768 (Miss.1976). *Accord Kurtz v. American Federal Savings and Loan Association*, 689 P.2d 944, 945–46 (Okla.1984) (when borrower indicates on mortgage loan disclosure forms his wish to secure credit insurance, lender obligated to attempt to procure insurance even when borrower fails to complete insurance application); *Sutton v. First National Bank of Crossville*, 620 S.W.2d 526, 529–30 (Tenn. 1981) (construing lending institution's language in mortgage loan disclosure form to constitute offer to procure credit insurance which offer was accepted by borrower when he signed on line indicating his desire to obtain credit insurance); *Hutson v. Wenatchee Federal Savings and Loan Assoc.*, 22 Wash.App. 91, 92–94, 588 P.2d 1192, 1194–95 (1978) (lender's words and conduct may create implied contract that

lender would procure credit life insurance for borrower).

Hancock Bank today asks this Court to declare that Integon Life Insurance Corporation by operation of Section 83–17–1 [1] of the Mississippi Code, is obligated to extend to Milton Travis credit life and credit disability insurance with benefits payable to Hancock Bank and to pay to Hancock Bank all benefits that would have been payable had Integon issued the Travises credit insurance upon full payment to Integon of all premiums due on or before the date of Milton Travis' injury, May 18, 1985. For the following reasons, the Court concludes that no contract for insurance was created between Integon Life Insurance Corporation, through its agent, and the Travises.

Courts have declined to rule that a policy for credit insurance is created or issued simply because the borrower indicates a desire to obtain credit insurance on a disclosure form. In *Burgess v. Charlottesville Savings and Loan Assoc.*, 349 F.Supp. 133 (W.D.Va.1972), *rev'd on other grounds*, 477 F.2d 40 (4th Cir.1973), the district court addressed, *inter alia*, the issue whether the lender and borrower either orally or in writing had formed a contract of credit insurance based on the borrower's indication on the loan disclosure form that credit insurance was desired. The Court wrote:

> Despite the plaintiff's allegations, there is no evidence of the existence of any written contract of life insurance. The only written document involving insurance completed by the Burgesses and Charlottesville Savings and Loan was the Regulation Z disclosure statement. *The purpose of this document was* to disclose the costs involved in the Burgesses' loan from defendant and *not to form an insurance contract.*

349 F.Supp. at 139 (emphasis added). The Court ultimately determined that, as a matter of law, no contract of insurance was issued as a result of the Regulation Z disclosure statement. *Id.*

■ Adopting the *Burgess* court's conclusion that a loan disclosure document was not intended to form an insurance contract, the Court finds, under the facts of the instant case, that Hancock Bank cannot hold up its disclosure document as the embodiment of an insurance contract between the Travises and Integon through its agent, Kate Gentry. The lynchpin of Hancock Bank's argument is that "[h]ad Hancock notified Integon of Mr. Travis' request, Integon would have issued to Milton E. Travis credit ... policies...." *See* Complaint, Paragraph VIII. Essentially, Hancock Bank asserts that its loan disclosure form is tantamount to an insurance application (Appendix "A" attached hereto) that would be automatically accepted by Integon. This position is, however, undercut by the memorandum agreement between Hancock Bank and Integon, Integon's disability income application form, and *most importantly*, the affidavit of Kate Gentry. The memorandum agreement clearly states that the agent is "not authorized to accept risks of any kind [or] to make ... any contract of insurance", and Integon's application form provides that the answers on the application "will form a part of the policy if issued and that the insurance shall not be in force *until this application* has been approved...." (emphasis added). Kate Gentry states in her affidavit that when a loan customer indicated a desire to obtain credit insurance on Hancock Bank's disclosure form, the bank would mail to the customer the appropriate insurance *application forms* accompanied by a letter (Appendix "B" attached hereto). The customer would, if he so desired, fill out the

**1.** Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, and application for insurance ... or otherwise give notice that he will receive or transmit the same ... or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself ... whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.

*application form* and return it to Hancock Bank whereupon it would be forwarded to Integon for processing and review (Gentry affidavit at p. 5) (emphasis added). The record clearly reflects that Integon intended and Hancock Bank understood that submission of a completed Integon application form to the insurer was the exclusive and non-waivable method of requesting insurance from Integon, *Cf. Interstate Life and Accident Insurance Co. v. Flanagan*, 284 So.2d 33, 36 (Miss.1973) (application merely an offer to accept insurance but does not become contract of insurance unless accepted by company), and that Integon would not automatically approve an application for insurance, but only after the company had processed, received, and approved the application would a contract for insurance exist, *Cf. Newark Fire Insurance Company v. Russell*, 142 Miss 397, 400–402, 107 So. 417, 417–418 (1926) (where company states that contract for insurance will issue upon company approval of application, said approval is a condition precedent to formation of insurance contract).

In *Saucier v. Life and Casualty Insurance Co.*, 181 Miss 887, 179 So. 851 (1940), the Mississippi Supreme Court held that the predecessor statute to Section 83–17–1 does not authorize an agent to materially change his principal's, the insurance company's, contract requirements. *Id.*, 179 So. at 629. The Court thinks it is clear beyond doubt that Integon's agent and Hancock Bank were aware that submission of an Integon application was a non-waivable prerequisite to the formation of an insurance contract. Under the facts presented, there was never any actual or implied contract binding Integon Life Insurance Corporation to provide credit insurance to the Travises.

Hancock Bank urges that recent opinions of the Mississippi Supreme Court have, *sub silentio*, overruled the *Saucier* holdings, thus the Travises' expression of a desire to obtain credit insurance to Kate Gentry, in her capacity as an officer of Hancock Bank, was an application to Integon since Gentry was also an agent for the insurer. Recognizing that Section 83–17–1 was enacted to protect insured persons and/or

their beneficiaries from insurance companies hiding behind the misdeeds of their agents, no Mississippi Supreme Court opinion to date has held an insurance company liable for acts of agents outside the scope of their working authority under the agency relationship. *e.g. Deerman v. Prudential Insurance Co.*, 727 F.2d 479, 480 (5th Cir.1984) (agreement between insurer and agent authorized agent to collect premiums and remit, thus failure to remit imputed to principal); *Southern United Life Insurance Co. v. Caves*, 481 So.2d 764, 768 (Miss. 1985) (insurer permitted agent to actually insure anyone at her discretion; no written application or inquiry into prospective insured's health required, thus principal deemed to intend to insure the world); *National Life and Accident Insurance Co. v. Miller*, 484 So.2d 329, 334 (Miss 1985) (agent responsible for filling out application, thus any error imputed to principal).

In the instant case, Integon's agent had no authority to waive the insurer's requirement of submission of a written application completed by the applicant. The *Saucier* opinion is controlling here; no Integon application was submitted to Integon as required, Integon's agency relationship did not permit waiver of this application requirement by the agent.

█ Alternatively, the Court finds that Section 83–17–1 is not applicable under the facts of this case and that no contract for insurance exists between Integon and the Travises. Hancock Bank's Vice-President in charge of the Direct Mortgage Loan Department, under the *Parnell* decision, was a fiduciary to the Travises with respect to their wishes for credit insurance, an agent of Integon with respect to credit insurance offered at Hancock Bank, and, at all times, an agent of Hancock Bank. The fact that the Vice-President had treble agency status does not permit one principal to pick and choose the principal that must bear the burden of any errors caused by their shared agents loyalties.

It must be recognized that as an agent of Integon, Kate Gentry had a duty to act in Integon's best interest and follow her prin-

cipal/insurer's instructions. She also has a duty as manager of the direct mortgage loan department and Hancock Bank to protect her principal/the bank from suffering any loss as a result of a default on a loan. *Parnell* clearly dictates that the Travises will not bear the loss resulting from their fiduciary/Kate Gentry's error.

The Mississippi Supreme Court has noted that:

> [W]here the agent of the [insurer] is the agent of the [insured and the beneficiary], ... it is an undisputable rule of law that unless, with the free and intelligent consent of his principal, given *after full knowledge of all the facts and circumstances* the agent cannot ... act for both the principal and the adverse part[ies].

*Wildberger v. Hartford Fire Insurance Co.*, 72 Miss. 338, 341, 17 So. 282, 283 (1895) (emphasis added).

In construing the Tennessee statute analogous to Section 83–17–1, the Sixth Circuit discussed the applicability of the statute to a situation where the insurance company's agent was also agent/vice-president of a bank in *American Bankers Life Assurance Co. v. Tri City Bank and Trust Co.*, 677 F.2d 28 (6th Cir.1982).

The bank entered a master credit life group insurance agency contract with American Bankers Life. The bank, as agent, was granted authority to solicit credit insurance applications from its borrowers, collect premiums, keep records and make accountings to the insurance company. The bank received forty percent (40%) of all premiums collected as a commission for selling the policies.

Powers, a bank vice-president, had the bank's authority to issue credit insurance certificates under the master contract as part of his duties as a loan officer. Powers made several false claims to the insurance company on nonexistent loans to deceased persons. The end result was that Powers received the benefit of most of the fraudulently obtained payments.

The insurance company discovered the scheme and sued the bank to recover its losses. The bank raised the Tennessee statute imputing the acts of the insurance company's agent to the company. The court stated:

> [T]he statute relied upon ... is ... inapplicable ... here. The statute is designed to protect insureds and beneficiaries who buy policies from insurance salesmen and who have no other direct connection with the insurance company.... When, as in this case, the bank as an insured is also a party to the master group policy for the issuance of credit life insurance, and acts as agent for the insurance company, receiving commissions on the insurance sales, a direct connection with the insurance company exists.... it is clear that the bank had the right to control the actions of Powers and other officers who sold the insurance policies. Under Tennessee law Powers' wrongful conduct should be imputed to the bank as principal under the doctrine of respondeat superior.

*Id.* at 30.

In the instant case, the bank was, as a beneficiary, a party to the policy and acted as agent for the insurance company through its Vice-President. Further, the bank had direct control over the Direct Mortgage Loan Department with respect to processing returned loan closing packages. Thus any wrongful conduct or mistakes should be imputed to the bank as Kate Gentry's pre-eminent principal. *See Salene v. Queen City Fire Insurance Co.*, 59 Or. 297, 298, 116 P. 1114, 1115 (1911) (where mortgagor is also agent of insurance company, mortgagee unable to enforce insurance policy written by mortgagor on property in which he held an interest).

It is the Court's opinion, therefore, that Integon's Motion for Summary Judgment should be granted; Hancock Bank's Motion for Summary Judgment should be denied. A separate Order will be entered accordingly.

APPENDIX A
EXHIBIT C
NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW RESERVE REGULATION Z
MORTGAGE LOAN DISCLOSURE

# HANCOCK BANK
Member FDIC

GULFPORT, MISSISSIPPI 39501

Name of Creditor

Borrower (s): __Milton Eugene & Willie Mae Travis__      Loan No: _____
<br>PLEASE PRINT

Address: __1704 Chesapeake St., Waveland, Ms.__      Phone No: _____
<br>STREET          CITY          STATE          ZIP

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 12.8842 % | $ 49;610.29 | $ 39,131.51 | $ 88,741.80 |

Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 180 | $493.01 | 1st of each month beginning with Installment due July 1, 1983. |

You may obtain property insurance from anyone you want that is acceptable to Hancock Bank.

Security: You are giving a security interest in:
- ☐ the goods or property being purchased.
- ☒ Your home located at 1704 Chesapeake St., Waveland, Ms.
- ☒ If checked, collateral securing other loans with the Bank may also secure this loan. You are also giving a security interest in any right you may have to the payment of money from the Bank.

Late Charge: If payment is late, you will be charged $_19.00_ /4% of the payment.

Prepayment: If you pay off early, you may have to pay a penalty.

Assumption: Someone buying your house may, subject to conditions, be allowed to assume the remainder of the mortgage, on the original terms.

Insurance: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost. The credit insurance premium quoted below is based on insurance coverage for the term of the loan, unless otherwise indicated. **

| Type | Premium | Signature |
|---|---|---|
| Credit Life | 180 x 14.35=$2,583.00 | I want credit life insurance  *Milton Eugene Travis* |
| Credit Disability | | I want credit disability insurance |
| Credit Life and Disability | | I want credit life and disability insurance  *Milton E. Travis* |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

Institution: HANCOCK BANK  *Kate Gentry  Vice Pres*, May 27, 1983

Borrower: I have a copy of this statement. _____ 5/27/83

Co-Borrower: I have a copy of this statement. _____ 5/27/83

TIL-200      e means an estimate

** (emphasis added)

APPENDIX B

**HANCOCK BANK**

GULFPORT, MISSISSIPPI 39501

KATE GENTRY
VICE PRESIDENT

Dear

Enclosed is an application for life insurance coverage on your real estate loan as per your request.

Please answer all questions on the application, sign it and return the entire application to us in the enclosed envelope.

We will then process the application with the insurance company. Upon notification of approval, we will notify you when to increase your monthly payment to cover the premium on this insurance.

Should the insurance company require any additional information from you, please comply with their request promptly, as this insurance coverage will not be in effect until the first month's premium has been paid by you.**

Thank you.

Sincerely,

Real Estate Department

Enclosures

** (emphasis added)