**LAUREL VALLEY OIL COMPANY., Appellant,**

v.

**76 LUBRICANTS COMPANY. et al., Appellees.**

[Cite as *Laurel Valley Oil Co. v. 76 Lubricants Co.,* 154 Ohio App.3d 512, 2003-Ohio-5163.]

Court of Appeals of Ohio,
Fifth District, Tuscarawas County.

No. 2003AP020017.

Decided Sept. 26, 2003.

514

Joshua R. Cohen, for appellant.

J. Kevin Lundholm, Clair Dickinson and Joseph T. Dattilo, for appellees Richard Dunn and Performance Race Fuels & Lubricants, LLC.

GWIN, Presiding Judge.

{¶ 1} Plaintiff-appellant, Laurel Valley Oil Company, appeals from a summary judgment of the Court of Common Pleas of Tuscarawas County, Ohio, entered in favor of defendants-appellees, 76 Lubricants Company, Scott Babbitt, Performance Race Fuels & Lubricants, and Richard Dunn, on appellant's claim for tortious interference of business relations, violation of the Ohio Deceptive Trade Practices Act, and civil conspiracy. The trial court also granted summary judgment in favor of appellee Richard Dunn on appellant's claim for breach of fiduciary duty. Appellant assigns four errors to the trial court:

{¶ 2} "The trial court erred in granting summary judgment in favor of all defendants/appellees on plaintiff/appellant Laurel Valley Oil Co.'s claim for tortious interference with business relations."

{¶ 3} "The trial court erred in granting summary judgment in favor of all defendants/appellees on Laurel Valley's claim for violation of the Ohio Deceptive Trade Practices Act."

{¶ 4} "The trial court erred in granting summary judgment in favor of appellee Richard Dunn on Laurel Valley's claim for breach of fiduciary duty."

{¶ 5} "The trial court erred in granting summary judgment in favor of defendants/appellees on Laurel Valley's claim for civil conspiracy."

{¶ 6} Appellant's statement pursuant to Loc.App.R. 9 states that summary judgment was inappropriate because genuine issues of material fact exist and also because the trial court erred in applying the law.

{¶ 7} The record indicates that appellant is a marketer and distributor of petroleum products that has been doing business in Tuscarawas County and the surrounding area for nearly three-quarters of a century. Appellee 76 Lubricants Company ("76") is a division of Phillips Petroleum Company, manufacturing and marketing a full line of oils, lubricants, and greases for transportation and industrial applications. In the mid–1990s, appellant, Laurel Valley, signed on to become a branded distributor of 76 products. Laurel Valley then had the right to buy products directly from appellee 76. Appellee 76 discourages its branded distributors from competing with other branded distributors, by asking them to service a specific geographic area or locale. For appellant, Laurel Valley, its geographic area is Tuscarawas County and the immediately surrounding area.

{¶ 8} Appellee Richard Dunn was employed by Laurel Valley for approximately five years. Appellee Dunn had previously become acquainted with appellee Scott Babbitt, who was the 76 marketing representative assigned to Laurel Valley. Laurel Valley alleged that in preparation for stealing away its customers, Dunn began telling customers that the company was failing financially and would go out of business, leaving them without a source for the oil and lubricant products they needed. Laurel Valley alleged that Dunn "must have expressed" his unhappiness to Babbitt and that they allegedly joined forces in a scheme to set up a competing enterprise. Sometime prior to March 15, 1999, Babbitt introduced Dunn to Paul Brine, the president of Julian W. Perkins, Inc., a branded 76 distributor with offices in Elyria. Babbitt encouraged Brine to establish a distributorship to sell 76 products in the same geographic area as Laurel Valley. Brine hired Dunn to manage Performance Lubricants, the distributorship Perkins formed to compete with Laurel Valley. Dunn left his employment with Laurel Valley to manage Performance Lubricants.

{¶ 9} Laurel Valley alleged that Babbitt and Dunn knew that their representations about appellant's shaky financial situation were untrue.

{¶ 10} Originally Dunn was an employee of Performance Lubricants, Inc., and had no ownership interest in the company. However, at some point, Dunn purchased Performance Lubricants from Perkins.

{¶ 11} Appellant argued that appellees' false and misleading statement about its financial problems caused it to suffer lost sales and profits and damaged its good will.

{¶ 12} Civ. R. 56(C) states:

"The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶ 13} A trial court should not grant summary judgment unless there is no genuine issue as to any material fact and if, construing the evidence in favor of the nonmoving party, reasonable minds could come to but one conclusion on the facts. *Ormet Primary Aluminum Corp. v. Emp. Ins. of Wausau* (2000), 88 Ohio St.3d 292, 725 N.E.2d 646. This court will review a summary judgment using the same standard as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

I

■ {¶ 14} In its first assignment of error, appellant, Laurel Valley, urges that the trial court erred in granting summary judgment in favor of appellees on appellant's claim for tortious interference with business relations.

■ {¶ 15} In *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, the Ohio Supreme Court outlined the elements of tortious interference with a contract. The elements are (1) the existence of contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the breach, (4) lack of justification, and (5) resulting damages. *Siegel,* paragraph one of the syllabus. The Supreme Court noted that the establishment of the fourth element of the tort, namely lack of justification, requires proof that the defendant's interference with another's contract was improper. Factors to be considered in determining whether someone has acted improperly are the nature of the actor's conduct, the actor's motives, the interests of the others with which the conduct interferes, the interest sought to be advanced by the actor, the social interest in protecting the freedom of action of

the actor and the contractual interest of the others, the proximity or remoteness of the actor's conduct to the interference, and the relations between the parties. The establishment of the privilege of fair competition as set forth in the Restatement of the Law 2d, Torts (1965), Sections 7 and 68, will defeat a claim of tortious inference with a contract where the contract is terminable at will.

## BUCKEYE MINING

{¶ 16} In support of its claim against Scott Babbitt, appellant, Laurel Valley argues that Babbitt "lent his assent" to appellee Dunn's false statements about Laurel Valley's financial condition. Laurel Valley offers the deposition testimony of Jack M. Grinwis, vice president of Buckeye Industrial Mining Company in charge of marketing. Grinwis testified that he ordinarily did not have any input into the purchase of products but that occasionally he would be involved. Grinwis testified that Dunn told him that 76 Lubricants had Laurel Valley on "credit hold," and that Laurel Valley was having financial problems. On at least one occasion, Scott Babbitt was present and nodded his head when Dunn made those statements. Grinwis testified that he considered it totally inappropriate for Dunn to speak in this manner in front of Scott Babbitt, and Grinwis had been uncomfortable with the situation. Grinwis testified that he probably had had a conversation with other persons at Buckeye Industrial Mining Company, but his company's buying practices with regard to Laurel Valley had not changed as a result of any of conversation he had had with Richard Dunn.

## PERFORMANCE LUBRICANTS

{¶ 17} Laurel Valley has argued that Scott Babbitt urged Paul Brine of Performance Lubricants, Inc., to compete with Laurel Valley by telling Brine that Laurel Valley was financially unstable. Laurel Valley argues that this was in order to have Performance Lubricants, Inc., expand its business dealings into Tuscarawas County in competition with Laurel Valley.

{¶ 18} In his deposition, Brine testified that Babbitt had introduced Richard Dunn with the intention of setting up a distribution outlet in the area of Tuscarawas County. Brine testified that he had been aware that Laurel Valley was a distributor in the area at the time he was setting up Performance Lubricants, Inc., and expressed concern to Babbitt that Laurel Valley was in the same area as his proposed new outlet. In response, Babbitt allegedly told Brine that Laurel Valley was financially unstable. At the time Babbitt and Dunn met with Brine, Brine considered it "likely" that Performance Lubricants would employ Richard Dunn in its new outlet.

{¶ 19} Brine conceded that he was always looking for business opportunities and the opportunity for his company to grow. He conceded that he was well

aware that if he expanded operations into Tuscarawas County, he would be in competition with Laurel Valley. Brine denied that he intended to "go after" Laurel Valley's customers specifically. Laurel Valley does not present evidence that it actually lost business because of this.

{¶ 20} Appellant argues that Babbitt intentionally bolstered the credibility of Dunn with Valley Mining and assisted Dunn in encouraging appellant's competitor.

## VALLEY MINING

{¶ 21} Regarding Dunn, appellant refers us to the deposition of Richard Seibert. Seibert is a preventative-maintenance supervisor for Valley Mining Company, Inc. In his position, he is responsible for purchasing lubricants for Valley Mining. Seibert testified that during the 12 years or so that he had been preventive-maintenance supervisor, he had purchased from Campbell Oil, Holmes Oil, and Laurel Valley. Laurel Valley's representative was Richard Dunn in the spring of 1999. On one occasion, Seibert attempted to order bulk oil from Laurel Valley. Valley Mining would order 12 to 13 loads of bulk oil per year, in 6,500 to 7,000 gallon increments. As part of their normal practice, Seibert called Richard Dunn and ordered the bulk oil. Seibert testified that Dunn called him back and told him that he would not be able to deliver it because 76 had a credit block on Laurel Valley's account. Seibert testified that Dunn suggested that Seibert go elsewhere for the oil.

{¶ 22} Seibert testified that he consulted with his CEO and placed an order with a competing company. Seibert testified that it was his understanding that Laurel Valley would not be able to supply Valley Mining's needs because of its credit problems.

{¶ 23} Seibert also testified that after this incident, Richard Dunn called him on several occasions while Dunn was still working for Laurel Valley and attempted to get Valley Mining's business back for Laurel Valley. Dunn also contacted Seibert after he left Laurel Valley, in order to get his business for Dunn's new concern.

{¶ 24} Seibert also testified that his company stayed with its new supplier, Campbell Oil, because it had a better price.

## THE CREDIT HOLD

{¶ 25} The parties dispute the significance of the credit hold 76 Lubricants had placed on Laurel Valley's account. Laurel Valley argues that it did not default on any payments for the product it sold and that the credit hold was intended to monitor the account because 76 Lubricants had various billing problems. Laurel Valley asserts that there is no evidence in the record to demonstrate that Laurel

Valley ever defaulted on an obligation to pay, or that there was any occasion when 76 refused to sell products to Laurel Valley.

{¶ 26} 76 responds that if any sale between Valley Mining and Laurel Valley was lost as a result of Dunn's representations about the credit hold, 76 and Scott Babbitt did not participate in the transaction, and, in fact, Campbell was not a 76 distributor, so 76 also lost sales as a result.

{¶ 27} Laurel Valley argues that the outstanding amount on the credit line with Laurel Valley reached over $300,000 at its high point, and 76 required that the Laurel Valley account be placed on hold until the credit liability was reduced to $100,000, including any outstanding orders. Appellees argue that if Dunn had told the customer that the product could not be shipped because of the credit hold, it was a factual statement and not actionable.

{¶ 28} It is apparent that the parties dispute whether the above-mentioned acts actually took place, and, if so, the significance of those actions. We find that reasonable minds could differ regarding the significance of the credit hold and its impact on Laurel Valley Oil Company's ability to fill orders from its customers. Reasonable minds could differ regarding whether Dunn attempted to interfere with Laurel Valley Oil Company's relationship with its customers by improperly refusing the Valley Mining order or whether he acted properly.

{¶ 29} We find that appellant raises no actions or circumstances involving 76 that contributed to the tortious interference with the contract. Appellant does not present evidence that it lost income because of any of the actions ascribed to Babbitt.

{¶ 30} The assignment of error is sustained as to Dunn and overruled as to 76 and Babbitt.

II

{¶ 31} In its second assignment of error, appellant argues that the trial court should not have granted summary judgment in favor of all appellees on its claim for violation of the Ohio Deceptive Trade Practices Act.

{¶ 32} R.C. 4165.02(A) provides that a party commits a deceptive trade practice when in the course of its business it disparages the goods, services, or business of another by a false representation of fact.

{¶ 33} Because we find that reasonable minds could differ regarding the actions and implications of Dunn, we find that summary judgment was inappropriate on Laurel Valley's claim for violation of the Ohio Deceptive Trade Practices Act.

{¶ 34} The second assignment of error is sustained.

III

{¶ 35} In its fourth assignment of error, appellant argues that the trial court should not have granted summary judgment on its claim for civil conspiracy. Appellant correctly defines civil conspiracy as a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863.

{¶ 36} Appellant argues that Babbitt nodded his head and bolstered Dunn's credibility with Grinwis. However, Grinwis testified that his company did not stop dealing with Laurel Valley.

{¶ 37} Appellant argues that Babbitt introduced Dunn to Brine, a competitor of Laurel Valley, in an effort to undermine appellant's client base. However, there is no evidence that Laurel Valley lost any sales as a result.

{¶ 38} We find that reasonable minds could not differ regarding Laurel Valley's claim for civil conspiracy. Accordingly, we find that the trial court correctly entered summary judgment on this claim.

{¶ 39} The fourth assignment of error is overruled.

IV

{¶ 40} In its third assignment of error, appellant argues that the trial court should not have granted summary judgment in favor of appellee Richard Dunn on his claim for breach of fiduciary duty. In *Stone v. Davis* (1981), 66 Ohio St.2d 74, 20 O.O.3d 64, 419 N.E.2d 1094, the Supreme Court defined a fiduciary relationship as one in which special confidence and trust is reposed in the integrity and fidelity of another, resulting in a position of superiority or influence acquired by virtue of the special trust. *Stone,* 66 Ohio St.2d at 78, 20 O.O.3d 64, 419 N.E.2d 1094. Not all employees are fiduciaries.

{¶ 41} Appellant cites no facts in support of its allegation that the relationship between Dunn and appellant was a fiduciary relationship, characterized by some special competence and trust which Dunn betrayed.

{¶ 42} We find that the trial court did not err in granting summary judgment in favor of appellee Richard Dunn on Laurel Valley's claim for breach of fiduciary duty.

{¶ 43} The third assignment of error is overruled.

{¶ 44} For the foregoing reasons, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed in part and reversed in part, and the

cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

WILLIAM B. HOFFMAN and EDWARDS, JJ., concur.