OPINION
{¶ 1} Plaintiff-appellant, Judith Guth, appeals the decision of the Clermont County Court of Common Pleas finding in favor of defendants-appellees, Allied Home Mortgage Capital Corp. ("Allied") and Steve Ellis ("Ellis"), following a trial to the court.
 {¶ 2} In response to a radio advertisement, Guth contacted Ellis, a representative or employee of Allied, on or about March 25, 2004, to inquire about obtaining a loan on her real *Page 2 
property located at 4445 Happiness Lane in Clermont County. At the time, Guth had an existing loan/mortgage on the property with an outstanding debt of approximately $72,139, for which she was making monthly payments of approximately $860. The property was valued at approximately $185,000.
 {¶ 3} When she spoke to Ellis, Guth explained that she wanted to use the proceeds of the loan to pay off various credit card debts and to obtain cash. The following day, Ellis faxed to Guth several documents, including a Uniform Residential Loan Application, a Truth-in-Lending Disclosure Statement, a Mortgage Loan Origination Agreement, a specific Ohio Mortgage Loan Origination Agreement, an Ohio Loan Contract, and a Loan Pricing Agreement. Guth reviewed and signed the documents, which led her to believe that Allied would provide a loan with fixed payments of $750 per month for at least 10 years with an interest rate of 5%. Guth sought to refinance $170,000 with $53,000 cash out at closing.
 {¶ 4} Ellis submitted a Loan or Line Registration/Submission Form to National City Bank seeking an equity line of credit for Guth as her best option for obtaining the cash out at closing. The Equity Reserve Line of Credit had a variable interest rate. The closing occurred on April 26, 2004. Guth testified that she failed to read the loan documents, which did not support her belief that she would be obtaining a fixed rate, conventional mortgage.
 {¶ 5} Although realizing that the loan had a variable rate within several days of closing, Guth admitted to filing the instant action approximately seventeen months after closing. As of the date Guth filed this lawsuit, the interest on the loan had been as high as 9.25%, with monthly payments of close to $1,300.
 {¶ 6} Guth set forth numerous causes of action in her complaint, including violations of the Ohio Mortgage Brokers Act (OMBA) (R.C. Chapter 1322), violations of the Ohio Consumer Sales Practices Act ("CSPA") (R.C. Chapter 1345), a breach of fiduciary duty, negligence, fraud, a breach of confidentiality, violations of the Fair Credit Reporting Act *Page 3 
(Section 1681a, Title 15, U.S. Code), breach of contract, and declaratory judgment. In a bench trial, the trial court ruled in favor of appellees on all claims. After the trial court denied Guth's motion for findings of fact and conclusions of law, Guth timely appealed, asserting ten assignments of error.
 {¶ 7} In Guth's first nine assignments of error, she argues that the court erred in making various findings of fact and conclusions of law. Judgments supported by some competent, credible evidence going to the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Seasons Coal Co.,Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77, citing C.E. MorrisCo. v. Foley Construction Co.(1978), 54 Ohio St.2d 279; App. R. 12(C). In reviewing the case at bar, this court is guided by the presumption that the findings of the trier of fact were correct. Id.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PLAINTIFF'S PREJUDICE BY CONCLUDING DEFENDANTS WERE EXEMPT FROM THE MORTGAGE BROKERS ACT."
 {¶ 10} Guth first argues that the trial court erred in finding that appellees were exempt from the OMBA for two reasons: (a) appellees failed to prove that they were acting as a mortgage banker with respect to this specific transaction with Guth, and (b) appellees failed to meet the other required elements of R.C. 1322.02(C)(1)(g), under which they claim exemption.
 {¶ 11} R.C. 1322.02 sets forth the requirements for obtaining a certificate of registration as a mortgage broker or a license to act as a loan officer and sets forth exemptions under the act. R.C. 1322.02(C)(1) provides:
 {¶ 12} "The following persons are exempt from sections 1322.01 to1322.12 of the Revised Code only with respect to business engaged in or authorized by their charter, license, authority, approval, or certificate, or as otherwise authorized by division (C)(1)(g) of this *Page 4 
section:
 {¶ 13} "(g) A mortgage banker. For purposes of division (C)(1)(g) of this section, `mortgage banker' means any person that makes, services, buys, or sells mortgage loans, that underwrites the loans, and that meets at least one of the following criteria:
 {¶ 14} "(ii) The person has been directly approved by the federal national mortgage association as a seller/servicer. Division (C)(1)(g)(ii) of this section includes a person that has been directly approved by the federal national mortgage association as a seller/servicer and that makes loans in excess of the applicable loan limit set by the federal national mortgage association, provided that the loans in all respects, except loan amounts, comply with the underwriting and documentation requirements of the federal national mortgage association."
 {¶ 15} R.C. 1322.02(C)(2) of this provision further provides:
 {¶ 16} "Any individual who is employed by a person exempt from sections 1322.01 to 1322.12 of the Revised Code is also exempt from those sections to the extent the individual is acting within the scope of the individual's employment and within the scope of the exempt person's charter, license, authority, approval, or certificate."
 {¶ 17} In addition, the burden of proving an exemption under R.C. 1322.01 to 1322.12 is on the person claiming the benefit of the exemption. R.C. 1322.11(D).
 {¶ 18} The trial court found that Allied is exempt from the act because "[a]t trial, Jeanne Stell, Allied Mortgage's executive vice-president, testified that Allied was licensed in Ohio as a mortgage banker, and was approved by the national mortgage association as a seller-servicer." The court also found that because Ellis is a person employed by an exempt party and "fits into this category" listed in the statute, he is entitled to receive the same exemption.
 {¶ 19} We find that the trial court erred in concluding that appellees are exempt from the OMBA. The plain meaning of R.C. 1322.02(C)(1) mandates that the exemption does not apply to this transaction, as it is undisputed that Allied and Ellis were functioning as mortgage *Page 5 
brokers in the transaction with Guth. The statute provides in relevant part, "the following persons are exempt from sections 1322.01 to 1322.12
of the Revised Code only with respect to business * * * authorized by division (C)(1)(g) of this section," thereby suggesting that Allied can only claim the exemption when it is engaged in the business of mortgage banking. (Emphasis added.) The language of 1322.02(C)(2) supports this interpretation, as it states that an individual who works for an exempt person is also exempt "to the extent the individual is acting within thescope of the exempt person's charter, license, authority, approval, orcertificate." (Emphasis added.)
 {¶ 20} As stated, it is undisputed that Allied and Ellis were functioning as mortgage brokers, and not bankers, in this transaction. At trial, Ellis testified to the following:
 {¶ 21} [Plaintiff's counsel] "Q. Did Ms. Guth apply for a mortgage loan from Allied?
 {¶ 22} [Ellis] "A. She applied from our company for a mortgage loan.
 {¶ 23} "Q. For you guys being the mortgage broker?
 {¶ 24} "A. Right, because that's what we are. That's what we do.
 {¶ 25} "Q. All right. You weren't providing the financing or Allied was not providing the financing, correct?
 {¶ 26} "A. No sir.
 {¶ 27} "Q. And I think you said at your deposition that a more accurate statement would be you — she was applying for a mortgage loan through Allied Home Mortgage?
 {¶ 28} "A. Correct."
 {¶ 29} Ms. Stell also gave similar testimony at trial when questioned about her response to discovery, stating that Allied never considered providing financing or a mortgage loan to Guth because Allied does not customarily provide loans itself in Ohio. She also testified that Allied did not have a loan to suit Guth's needs and that they only act as a lender *Page 6 
approximately 5% of the time in Ohio. During the other 95% of the time, they act as brokers.
 {¶ 30} Therefore, because the exemptions contained in R.C. 1322.02(C)(1) and R.C. 1322.02(C)(2) are transaction specific, and because it is undisputed that appellees were acting as mortgage brokers with respect to this transaction with Guth, we find that appellees are not exempt from the OMBA in this case. Guth's first assignment of error is sustained.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY CONCLUDING THAT ACTIONS BROUGHT PURSUANT TO REMEDIAL STATUES [SIC], SUCH AS THE MORTGAGE BROKERS ACT, ARE SIMPLY A VARIANT OF COMMON LAW FRAUD FOR WHICH REASONABLE RELIANCE MUST BE PROVEN."
 {¶ 33} In her second assignment of error, Guth argues that the trial court erred when it determined that the OMBA is a variant on common law fraud and found that because Guth could not prove justifiable reliance on any misrepresentations, she failed to prove her claim under the OMBA.
 {¶ 34} In finding that Guth failed to prove that appellees violated the OMBA, the trial court stated, "Even assuming that no exemption applies, Guth's claims under the [OMBA] fail because Guth has not been `injured' by an Act violation. Each alleged Act violation is a variant on common law fraud. Since Guth admitted that she did not read the loan documents that she signed, she cannot make out a claim for relief because she cannot prove justifiable reliance on [appellees'] alleged misrepresentations."
 {¶ 35} The trial court based its rejection of Guth's claim for relief solely on the finding that she did not prove justifiable reliance. The OMBA, however, does not require such a showing to establish a violation.
 {¶ 36} R.C. 1322.07 prohibits mortgage brokers from engaging "in conduct that constitutes improper, fraudulent, or dishonest dealings" and knowingly making, proposing, or *Page 7 
soliciting "fraudulent, false or misleading statements on any mortgage document or any document related to a mortgage, including a mortgage application, real estate appraisal, or real estate settlement or closing document." R.C. 1322.07(C), (E). A mortgagor injured by a violation of R.C. 1322.07 may bring an action for recovery of damages. R.C. 1322.11.
 {¶ 37} In Roark v. Rydell, Hamilton App. Nos. C-061090, C-070032,2007-Ohio-6873, the First Appellate District upheld the trial court's findings that the defendants violated the OMBA when they "participated in a conspiracy to defraud various lenders by knowingly submitting false documentation to the lenders in support of mortgage loan applications," and that "the homeowners had suffered damages directly related to the defendants' conduct." Id. at ¶ 60.
 {¶ 38} Similarly, in Myer v. Preferred Credit, Inc.,117 Ohio Misc.2d 8, 2001-Ohio-4190, the trial court quoted the relevant provisions of the OMBA and found that the company violated provisions of the OMBA "(a) by engaging in dual representation without making advance full disclosure, and (b) by receiving a secret profit." Id. at ¶ 59.
 {¶ 39} Finally, in Equicredit Corp. of America v. Jackson, Mahoning App. No. 03 MA 191, 2004-Ohio-6376, the Seventh Appellate District held that the mortgage company did not violate the OMBA because the broker was completely unaware of the inaccuracies contained in the mortgage application, as the mortgagor and the representative of the siding company completed the application without the broker's assistance and because the broker never represented that payments would not increase. Id. at ¶ 10, 66.
 {¶ 40} In all of these cases, the courts focused on whether the defendants' conduct violated the OMBA, in accordance with the statute, not on whether plaintiffs justifiably relied on any "alleged misrepresentations."
 {¶ 41} The OMBA is a remedial statute and is "designed in part to protect mortgage borrowers from wrongful conduct by mortgage brokers."Equicredit at ¶ 65. It is not a "variant *Page 8 
on common law fraud," for which justifiable reliance must be proven, as the trial court found. We find the trial court erred in its application of the OMBA, as the statute prohibits mortgage brokers from engaging in any improper, fraudulent, or dishonest conduct and from making or proposing false or misleading statements on any document related to a mortgage. R.C. 1322.07. Our review of the record demonstrates that the trial court focused solely on Guth's actions and the documents she signed at closing, rather than the contents of all documents and statements made by appellees throughout the entire mortgage process, as encompassed by R.C. 1322.07. Therefore, Guth's second assignment of error is sustained.
 {¶ 42} Assignment of Error No. 3:
 {¶ 43} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY FINDING THAT DEFENDANTS WERE EXEMPT FROM THE PROVISIONS OF THE OHIO CONSUMER SALES PRACTICES ACT."
 {¶ 44} Guth argues that the trial court erred by concluding that Allied's status as a dealer in intangibles exempts it from the CSPA, R.C. 1345.02(A) and R.C. 1345.03(A), and asserts that there was no evidence to suggest that Allied was functioning as a dealer in intangibles with respect to this transaction.
 {¶ 45} The CSPA prohibits "unfair or deceptive" and "unconscionable" acts or practices by suppliers in consumer transactions, and this protection extends to acts occurring before, during, or after the transaction. Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, 29; R.C. 1345.03. The act defines a "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." R.C. 1345.01(C). A "consumer transaction" is "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). The CSPA specifically provides that a "consumer *Page 9 
transaction" does not include transactions between persons defined in R.C. 5725.01 and their customers. R.C. 1345.01(A). R.C. 5725.01(B)(1) defines a "dealer in intangibles" as including every person who keeps an office or other place of business in this state and engages at such office or other place in a business that consists primarily of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling bonds, stocks, or other investment securities, whether on the person's own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings."[1]
 {¶ 46} There is disputed case law concerning the application of this version of the act to companies and their employees acting as mortgage brokers in a transaction. In Zanni v. Stelzer, 174 Ohio App.3d 84,2007-Ohio-6215, the Ninth Appellate District interpreted the CSPA to exempt mortgage brokers, by quoting the following language: "every person who keeps an office or other place of business in this state and engages * * * in a business that consists primarily of lending money, or discounting, buying, or selling * * * notes, mortgages, or other evidences of indebtedness * * * whether on the person's own account with a view to profit, or as an agent or broker for others, with a view to profit or personal earnings." Id. at
 {¶ 47} In Zanni, the home mortgagors filed suit against the mortgage company, Summertyme Mortgage, and its employee, asserting claims including a violation of the CSPA arising out of a mortgage transaction where the employee induced the mortgagors to enter into a mortgage and home-equity loan contract as well as an unexplained "investment scheme." With the above interpretation of the statute's language, the Ninth District found that *Page 10 
the home mortgagors were not entitled to relief under the CSPA, as the mortgage broker was "one who engages in the business of buying or selling mortgages." Zanni, at ¶ 11-12.
 {¶ 48} In Equicredit, the Seventh District found that the broker, Moore Financial, fits the definition of a supplier and its agreement to provide mortgage broker services constitutes a consumer transaction under the terms of the act. Several other common pleas courts have found the same. See Smith v. Northwest Residential Mtge. Services Ltd.,2002 WL 32995251 (Ohio C.P. 2002); State ex rel. Petro v. Berks,2003 WL 23335972 (Ohio C.P. 2004).
 {¶ 49} The Ninth District considered a mortgage broker to be a buyer and seller of mortgages, whereas the Seventh District considered a broker as one who provides services. Black's Law Dictionary defines a mortgage broker as "an individual or organization that markets mortgage loans and brings lenders and borrowers together." At trial, Ellis testified that as a mortgage broker/loan officer, he serves "on the behalf of the person seeking the loan" and tries "to find the best deal for that person." As previously stated, it is undisputed that Ellis, through Allied, was functioning as a mortgage broker in this transaction, and Allied primarily functions as a mortgage broker in Ohio. We find that the trial court erred when it determined that appellees are exempt from the CSPA. Appellees, as mortgage brokers, provide services to their clients and are subject to the relevant provisions of the CSPA. Accordingly, we sustain Guth's third assignment of error.
 {¶ 50} Assignment of Error No. 4:
 {¶ 51} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY CONCLUDING THAT ACTIONS BROUGHT PURSUANT TO REMEDIAL STATUES [SIC], SUCH AS THE CONSUMER SALES PRACTICES ACT, ARE SIMPLY A VARIANT OF COMMON LAW FRAUD FOR WHICH REASONABLE RELIANCE MUST BE PROVEN."
 {¶ 52} In her fourth assignment of error, Guth argues that the trial court erred when it required her to make a showing of reliance and found that she failed to prove reliance upon *Page 11 
any representations made by appellees. In finding that Guth did not make out a claim for relief under the CSPA, the trial court stated, "Even assuming, arguendo, that Ellis and [Allied] are subject to the act, the Court does not find credible evidence to support a claim that they violated the terms of the act by engaging in any unfair or deceptive practice or act. Again, [Guth] asserts that she relied uponclaimed representations made by defendant Ellis in a single telephone call and a faxed transmission without reading any of the documents provided to her prior to closing. This is not credible in the Court's mind." (Emphasis in original.) The trial court, again, based its decision solely on the fact that Guth did not read any of the documents she signed at closing.
 {¶ 53} The CSPA is designed to compensate for traditional consumer remedies, and it gives protection to consumers from "unscrupulous suppliers" in a more expedient and affordable manner than a tort or contract action under the common law. Walker v. Dominion Homes,Inc., 164 Ohio App.3d 385, 2005-Ohio-6055, quoting Einhorn. The act prohibits "unfair or deceptive" and "unconscionable" acts or practices by suppliers in consumer transactions, and this protection extends to acts occurring before, during, or after the transaction.Einhorn at 29; R.C. 1345.03. It is remedial legislation, and its terms should be interpreted liberally in favor of the consumer. Id.
 {¶ 54} In Walker, the Tenth Appellate District analyzed what constitutes a deceptive or unfair act in violation of the CSPA. "Generally, an act or practice is deceptive if it `has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts.' (Citation omitted.) An act or practice is unfair if it is marked by injustice, partiality, or deception, or it results in inequitable business dealings. (Citation omitted.) In determining whether an act or practice is either unfair or deceptive, a court must focus upon how the consumer views the act or practice, and not whether the supplier intended to be unfair or deceptive." (Citations omitted.)Walker at ¶ 25. *Page 12 
 {¶ 55} The court also discussed what a party must show in order to prove that an act was unconscionable, as provided for in the CSPA, and stated, "Pursuant to 1345.03(A), `[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction.' In determining whether an act is unconscionable, a court must consider a variety of circumstances, including `[w]hether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.' R.C. 1345.03(B)(3)."Walker at ¶ 30.
 {¶ 56} Like a claim under the OMBA, a claim under the CSPA is separate and distinct from a claim under common law fraud, for which justifiable reliance must be proven. See Mid-America Acceptance Co. v. Lightle
(1989), 63 Ohio App.3d 590, 600. We find the trial court erred in its application of the CSPA to Guth's claims. Our review of the record demonstrates that the trial court focused solely on Guth's actions and the documents she signed at closing and failed to apply the language of the relevant CSPA provisions to the facts of this case. Accordingly, Guth's fourth assignment of error is sustained.
 {¶ 57} Assignment of Error No. 5:
 {¶ 58} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY CONCLUDING THAT DEFENDANTS DID NOT HAVE A FIDUCIARY RELATIONSHIP WITH OR HAVE FIDUCIARY DUTIES TO THE PLAINTIFF."
 {¶ 59} Assignment of Error No. 6:
 {¶ 60} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY IMPOSING A DUTY TO READ EVERY DOCUMENT AT THE CLOSING NOTWITHSTANDING THE EXISTENCE OF A FIDUCIARY RELATIONSHIP WITH THE DEFENDANTS."
 {¶ 61} For ease of discussion, we will consider Guth's fifth and sixth assignments of error together. Guth argues that the trial court erred when it found that appellees owed no *Page 13 
fiduciary duties to her. She also asserts that a mortgage broker's role in advising and assisting borrowers in obtaining a mortgage establishes a fiduciary relationship and that a contractual provision declaring the broker to be an independent contractor fails to negate the existence of the fiduciary duties between the parties.
 {¶ 62} In its decision, the trial court found that Guth failed to establish the existence of a fiduciary duty, finding that because the Mortgage Loan Origination Agreement and the Ohio Mortgage Loan Origination Agreement state that Allied "is an independent contractor and not an agent of the borrower or any lender," a fiduciary duty did not arise out of a contract between the parties. Further, the court found that a fiduciary relationship did not arise out of Ellis' status as a broker. The court stated, "Without an agency relationship, a contractual agreement, or a special relationship, no fiduciary duty can exist. Where no duty exists, no breach can occur."
 {¶ 63} As previously discussed, it is undisputed that Allied and Ellis were acting as mortgage brokers in the transaction with Guth. Mortgage brokers have fiduciary duties to their clients. Swayne v. BeeblesInvestments, Inc., Franklin App. No. 07AP-851, 2008-Ohio-1839, at ¶ 38-39, citing Stone v. Davis (1981), 66 Ohio St.2d 74; Myer, at ¶ 19;Carver v. Discount Funding Associates, Inc., 2004 WL 2827229 (Ohio C.P. 2004). The independent contractor language in the loan origination agreements signed by Guth and cited by the trial court does not negate such duty. The term "independent contractor" "is antithetical to the word `servant,' although not to the word `agent.' In fact most of the persons known as agents, that is brokers, factors, attorneys, collection agencies, and selling agencies, are independent contractors as the term is used in the Restatement of this Subject, since they are contractors, but although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of their services. However, they fall within the category of agents. They are fiduciaries; they owe to the principal the basic *Page 14 
obligations of agency: loyalty and obedience." Restatement (Second) of Agency, Section 14N, comment a. Because it is well-established that a mortgage broker owes a fiduciary duty to his client, we find that the trial court erred in holding that no such relationship existed between Guth and appellees.[2] Although we have determined that a fiduciary relationship existed between the parties, it is for the trial court to determine whether appellees breached their fiduciary duty to Guth. We therefore sustain Guth's fifth and sixth assignment of error.
 {¶ 64} Assignment of Error No. 7:
 {¶ 65} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY FINDING NO BASIS FOR A CLAIM OF NEGLIGENCE."
 {¶ 66} Guth argues that the trial court erred by concluding that she had not met her burden to prove a claim for negligence. Because Guth's negligence claim is traceable to the same set of facts and circumstances as her claims discussed herein, and because those claims are so intertwined by the evidence, we sustain her seventh assignment of error. We are of the opinion that this claim cannot be comfortably isolated from Guth's statutory and fiduciary claims for purposes of this appeal. See Claggett v. Lutheran Social Services of the Miami Valley (Sept. 22, 1992), Montgomery App. No. 13131.
 {¶ 67} Assignment of Error No. 8:
 {¶ 68} "THE TRIAL COURT ERRED TO THE PREJUDCE OF THE PLAINTIFF BY DISMISSING DURING TRIAL THE CLAIM FOR BREACH OF CONFIDENTIALITY."
 {¶ 69} Guth asserts that Allied acted beyond its authority by distributing her confidential information to National City Bank. At the close of Guth's case, appellees moved for a directed verdict on all of Guth's causes of action, which the trial court converted into a motion for involuntary dismissal. In granting the motion only as to the breach of confidentiality claim, the *Page 15 
trial court stated, "I'm going to overrule the motion with respect to all but the breach of confidentiality claim. I don't think that there has been any showing here with the respect to that claim that would allow finding in favor of [Guth]." In its decision issued after the trial, the court simply stated, "Plaintiff Guth's claim for breach of confidentiality was dismissed by Plaintiff under Civ. R. 41(B)(2) at trial."
 {¶ 70} Like Civ. R. 52, Civ. R. 41(B)(2) confers a substantial right on the parties and imposes a mandatory duty on the trial court. Refusal to comply with a proper request under Civ. R. 41(B)(2) constitutes prejudicial error. Orlow v. Vilas (1971), 28 Ohio App.2d 57. An opinion or decision filed in the action and containing findings of fact and conclusions of law separately stated, though not specifically labeled as such, satisfies the requirements of Civ. R. 52 and Civ. R. 41(B)(2).
 {¶ 71} In this case, the trial court stated its findings of fact and conclusions of law separately in a decision in regard to all of Guth's claims, except for her claim of breach of confidentiality. Accordingly, we find that the trial court erred when it made insufficient findings of fact and conclusions of law as to Guth's claim for breach of confidentiality, pursuant to the requirements of Civ. R. 41(B)(2). Guth's eighth assignment of error is sustained.
 {¶ 72} Assignment of Error No. 9:
 {¶ 73} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY FINDING NO BREACH OF CONTRACT WHEN DEFENDANTS TOOK A FEE IN EXCESS OF THAT PROVIDED FOR IN THE CONTRACT BETWEEN THE PARTIES."
 {¶ 74} Guth argues that prior to closing, she signed Allied's Ohio Mortgage Loan Original Agreement, which provided that Guth would pay to Allied a fee of "2.5% of the principal amount of the loan." Based on the $170,000 financed by Guth, she asserts that Allied should have been paid a fee of $4,250 and claims that Allied breached their contract when it "took a brokers fee totaling $4500." *Page 16 
 {¶ 75} We overrule this assignment of error on the basis that it is premature, as Guth could possibly recover the entire fee at issue through her other claims on remand to the trial court.
 {¶ 76} Assignment of Error No. 10:
 {¶ 77} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF BY DENYING PLAINTIFF'S TIMELY MOTION FOR THE ISSUANCE OF WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW, PURSUANT TO THE MANDATE OF RULE 52."
 {¶ 78} Guth argues that the trial court failed to provide sufficient findings of fact and conclusions of law in its prejudgment decision issued on December 26, 2006. Based on our above findings, this assignment of error is rendered moot, except as to the breach of confidentiality claim as previously discussed.
 {¶ 79} In conclusion, we reverse, in part, and remand the OMBA, CSPA, fiduciary, and negligence claims to the trial court for a new trial in accordance with our findings herein. Further, we remand the breach of confidentiality claim for findings of fact and conclusions of law, as mandated by Civ. R. 41(B)(2).
 {¶ 80} Judgment reversed, in part, and remanded.
BRESSLER and WALSH, JJ., concur.
[1] After the filing of this lawsuit, the legislature amended R.C. 1345.01(A), which now provides that "transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers" are not excluded from the act. Because this amendment did not take effect until January 1, 2007, it does not apply to this case.
[2] Our holding is consistent with current legislation, which codifies the common law and provides that mortgage brokers owe fiduciary duties to their clients, and those duties cannot be modified or waived. R.C. 1322.081. *Page 1